EDWARD J. DORAN ET AL. *v.* GLADYS J. RUGG ET AL.

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 110859

Memorandum filed February 10, 1960

*Richard T. Scully,* of Hartford, for the plaintiffs.

*Ress & Fink,* of Hartford, for the defendants.

HOUSE, J. This action is for damages pursuant to the provisions of § 52-560 of the General Statutes. This section provides that any person who cuts trees standing on the land of another without license of the owner, and any person who aids therein, shall pay to the party injured thereby $1 for each tree under one foot in diameter, "and for each tree of a

diameter of one foot or more three times its value; but, when the court is satisfied that the defendant was guilty through mistake and believed that the timber was growing on his own land, it shall render judgment for no more than its true value."

The plaintiffs and the named defendant were adjoining owners of real estate along whose common bound ran a line of tall white pine trees planted years ago to border a private driveway. The defendant wished to subdivide her premises, converting the driveway to a publicly accepted highway. This required the establishment of a fixed, closed boundary between these parties. The defendant employed the services of an engineer to establish such a line, but finding that the records called for a line along the north line of the pine trees and that such a line would be too irregular to serve as a suitable highway bound, he suggested a boundary agreement between the parties establishing a line in a straighter course. After some negotiation, surveying and conferences, such a line was established and confirmed in a boundary line agreement between the plaintiffs and the named defendant, the executed agreement defining the common bound in detail being then recorded.

Thereafter, the named defendant engaged the services of the defendant Holcomb to cut trees along the proposed new street and expressly directed him to cut the row of pine trees which ran generally along the boundary line of the parties, except those trees along the boundary adjacent to the plaintiffs' home. She testified that notwithstanding all the efforts expended in drafting and executing a new boundary line agreement and thus establishing a new and exact line, she assumed from her original deed that the trees were on her property and therefore directed the defendant Holcomb to cut all of these trees. He cut them down in accordance with her directions.

The situation is complicated by a disagreement in maps and surveys, and between experts as to the effect on the ownership of the trees of the exact line provided in the new boundary agreement, and on the question of the true value of the trees. According to the plaintiffs' evidence, there were twenty-two trees cut, of which seven were entirely on the land of the plaintiffs and five more were on the boundary line. Also, according to the testimony of the expert called by the plaintiffs, the trees each had a value of $1,000. According to the evidence produced by the defendants, there were twenty-six trees cut, of which four were entirely on the land of the plaintiffs, eleven were entirely on the property of the defendant Rugg, and eleven straddled the boundary line in varying degrees. According to one expert who testified in behalf of the defendants, the trees had a value of $50 each. Another expert who, by coincidence, formerly owned the plaintiffs' premises, placed the value at $225 each for the trees that were cut.

From the conflict of evidence and opinion, it is concluded that the correct line and figure are as testified to by the defendants' engineer and that of the trees cut, four were entirely on the land of the plaintiffs and eleven grew directly on the boundary line. It is also concluded that the trees had a true value at the time of the cutting of $225 each. It is also found that the first cut tree westerly of the college highway was dead at the time it was cut down, and at the time of the cutting had no value.

The law regarding ownership of a tree whose trunk lies partly upon the lands of different owners was well established in this jurisdiction in the leading case of *Robinson* v. *Clapp*, 65 Conn. 365. The conclusion is set out on page 379 as follows: "It would really seem to come to this, that each of the landowners upon whose land any part of a trunk of a tree stands has an interest in that tree, a prop-

erty in it, equal in the first instance to, or perhaps rather identical with, the part which is upon his land; and in the next place embracing the right to demand that the owner of the other portion shall so use his part as not unreasonably to injure or destroy the whole." Taking the line and measurements of the trees as shown on exhibit 4 and the computation therefrom as to the portion of each cut tree which was standing partly on the land of the plaintiffs, the parties have stipulated on the basis of the court's finding of $225 as the value for each whole tree that the total value of the four trees which stood entirely on the land of the plaintiffs and of the percentages of the other trees which stood in part on the plaintiffs' land (excluding the tree found to be dead when cut), is $2174.25. It is concluded, therefore, that the true value of the plaintiffs' interests in the trees which were destroyed was $2174.25.

Under the statute (§ 52-560), the plaintiffs are entitled to damages of three times the value of each tree cut when the tree is one foot in diameter or more, as was each of these trees. The statute, however, contains a further provision that when the court is satisfied that the defendant was guilty "through mistake and believed that the timber was growing on his own land," it shall render judgment for no more than the true value. The burden of proof as to mistake is upon the defendants. *Petroman* v. *Anderson,* 105 Conn. 366, 368.

The present action is in two counts and against two defendants. The first count is directed against Miss Rugg, the owner of the premises adjoining the plaintiffs. It is undisputed that it was Miss Rugg who directed Holcomb to cut these trees, was on the scene each day to check the work being done and retained the usable lumber from the trees. The principle embodied in the maxim "Qui facit per alium facit per se" applies, and the defendant Rugg

is liable under the statute for trees cut in fact by her authorized agents or employees. "The provision in the statute making liable not only the person who cuts, destroys or carries away trees but also 'any person who shall aid therein' merely gives statutory recognition to the principle that all who actively participate in any manner in the commission of a tort, or who command, direct, advise, encourage, aid or abet its commission, are jointly and severally liable therefor." *Banks* v. *Watrous,* 134 Conn. 592, 600. Also, under the second count, the defendant Holcomb is individually liable. It was he who in fact committed the trespass and entered and cut down the trees on the land of the plaintiffs.

It appears, however, that a different measure of damages must be applied to the separate defendants in the light of the statutory provision for treble damages in the absence of the existence of the statutory provision for mitigation. "The statute, like others in the statute book which provide damages for wrongful conduct in excess of those ordinarily recoverable, is not a penal statute; *Plumb* v. *Griffin,* 74 Conn. 132, 135, . . .; *Cristilly* v. *Warner,* 87 Conn. 461, 468, . . .; it affords the basis of a civil action in which the damages, 'assessed because of and with reference to the degree of the defendant's culpability may be, and generally are, compensatory in their nature, although they embrace injuries or expenses not included in strict legal damages.' *Cristilly* v. *Warner,* supra, 471." *Banks* v. *Watrous,* supra.

On the first count directed against the defendant Rugg, it is concluded that she has sustained the burden of bringing herself within the statutory provision for mitigation in that she has satisfied the court that she "was guilty through mistake and believed that the timber was growing on . . . [her] own land." "Mistake is internal; it is a mental condition, conception, or conviction of the understand-

ing, erroneous, but none the less a conviction, which influences the will and leads to some outward physical manifestation." 58 C.J.S. 829; 36 Am. Jur. 455. The court is satisfied that Miss Rugg, notwithstanding the recently executed boundary agreement which specifically defined the boundary, really still believed in good faith that her bound ran along the north line of this row of trees and that the new agreement merely caused that line to run in a straighter line than previously. It is the conclusion of the court that her mistake was "an honest mistake and belief" as the statute requires. See *Petroman* v. *Anderson,* 105 Conn. 366, 371. Furthermore, not only was it an honest mistake on her part but she (as the statute requires in the conjunctive) also believed that the timber was growing on her own land.

Therefore, under the allegations of the first count, the plaintiffs have proved the statutory liability of the defendant Rugg, but she has sustained the burden of proving her mistake and belief that the timber was growing on her own land. Accordingly, as against her, the plaintiffs are entitled to damages in the amount of the true value of the trees cut, which is found to be $2174.25.

On the second count, directed against the defendant Holcomb, the requirements of proof to bring him within the mitigation clause have not been met. It does appear that his part in the cutting was done under a mistaken belief that Miss Rugg was correct in telling him that she owned the trees, and therefore it has been established that he was "guilty through mistake." However, he has not brought himself within the full requirement of the mitigating clause, which requires proof that he was "guilty through mistake and believed that the timber was growing on his own land." There is no suggestion that the defendant Holcomb ever claimed any in-

terest in the land involved or believed that the trees were growing on his own land. To escape the imposition of treble damages, it was incumbent upon him to prove not only mistake but the further specific affirmative belief that the timber was growing on his own land.

The statute does not present a situation where the full realization of its purpose requires that "and" be interpreted as "or." See *Bania* v. *New Hartford,* 138 Conn. 172, 178; *Bordonaro* v. *Senk,* 109 Conn. 428, 430; *Howard* v. *Batchelder,* 143 Conn. 328, 337. It is not just the existence of any mistake which will relieve a defendant under this statute, but the existence of some mistake plus the affirmative belief in the tort-feasor's own title. Where a statute is plain and unambiguous in its terms, the court is not concerned with the wisdom or unwisdom of the legislation nor with the recognition of equities which contravene such wording. *State ex rel. Kirby* v. *Board of Fire Commissioners,* 129 Conn. 419, 424; *Tileston* v. *Ullman,* 129 Conn. 84, 94; *McPadden* v. *Morris,* 126 Conn. 654, 658. Where the legislative intent is clear and the language used to express it is unambiguous, there is no room for statutory construction. *State ex rel. Cooley* v. *Kegley,* 143 Conn. 679, 683; *Hartland* v. *Jensen's, Inc.,* 146 Conn. 697, 701. The history of this statute is also relevant in determining its proper interpretation. *Milestan* v. *Tisi,* 140 Conn. 464, 471; *Hurlbutt* v. *Hatheway,* 139 Conn. 258, 261. It is of early colonial origin, and in its earliest form the mitigating clause operated when the court "shall be well satisfied that the Defendant was only guilty through Mistake; and that he really believed that the Timber complained of, was when growing, upon his own Land." An Act for Detecting and Punishing Trespass," adopted by the General Assembly on October 13, 1726; Statutes, 1715-1748, p. 331. By the revision of 1821, the language had been changed to

its present form and has so continued to this day. Statutes, 1821, p. 466, § 3.

Nor is it unreasonable to ascribe to the legislature a recognition of the common existence of uncertain bounds in wooded areas and the definite intention to provide for an alternate measure of damages for wrongfully cutting a tree depending on whether the cutter entertained a belief as to his own ownership of it.

Therefore, under the allegations of the second count, the plaintiffs have proved the statutory liability of the defendant Holcomb and he has failed to sustain the burden of proving in addition to his mistake his belief that the timber was growing on his own land. Accordingly, as against him, the plaintiffs are entitled to the statutory treble value.

Judgment may enter for the plaintiffs against the defendant Rugg for $2174.25 and against the defendant Holcomb for $6522.75.