[No. 36398. Department One. July 3, 1963.]

HARRY GUAY, *Appellant*, v. WASHINGTON NATURAL GAS COMPANY *et al., Respondents.**

*Wright, Wendells, Froelich & Power,* for appellant.

*Ogden & Ogden,* by *Raymond D. Ogden,* for respondents.

HALE, J.—Treble damages are sought in this action for injuries to trees, timber, shrubs and land.

Appellant owns an undeveloped 40-acre tract of land in King County. Its highest and best use, achieved through contour or curvilinear platting, is first-class suburban residential. The respondent, Washington Natural Gas Com-

* Reported in 383 P. (2d) 296.

pany, sought easements across a part of this tract to run a pipeline to the Hazelwood Housing Development located about a mile from appellant's property.

To obtain these easements, the gas company's supervising engineer, Malcolm McCallum, designated one Willis Cook, who had little or no experience in title searches or the handling of easement matters. Mr. Cook set about his task without the aid of a legal description of appellant's property or a written title report as to its ownership. He was unable to determine ownership from his own examination of the county assessor's records, but sought no help from the assessor or any member of his staff. He called the offices of a title insurance company about the matter and was told by someone, whom he could not identify, that the property over which the easement would run was the property of "Malibu Homes, Inc.," a corporation owned by a Mr. Morrison.

Mr. Morrison detailed an engineer in his employ to aid Mr. Cook, and together they prepared an easement from Malibu Homes to the Washington Natural Gas Company. The easement, recorded May 5, 1960, in the office of the King County Auditor, generously allowed the gas company to take a 1354-foot strip of appellant's property and a 365-foot strip of Malibu Homes' land for the construction of its pipeline. About five days after the easement had been recorded, the other respondent, Mid-Mountain Contractors, Inc., acting for the respondent gas company, entered upon appellant's land to clear the right of way for the pipeline.

The trial court found that the respondents on appellant's property ". . . cut a swath in a north-south direction . . . ranging from thirty to fifty feet in width, cutting and destroying trees, brush and shrubs and denuding the strip, making some twelve piles of stumps, logs and debris along the easterly edge of the cut. . . ."

Appellant's ownership of his land was at all times evident by his recorded deed in the auditor's files, and the gas company's agents saw his name carried as owner on a Kroll Atlas of the area. No search of the county auditor's

record was ever made by either of the respondents to ascertain the ownership of appellant's property. Respondents pleaded that their entry upon appellant's land was casual and involuntary, but the court qualified this assertion in its finding of fact reading as follows:

"Defendant's entry on plaintiff's land was intentional, but under the mistaken belief that it had obtained a valid easement. Defendant was negligent in the manner in which it obtained the invalid easement. In this respect defendant's entry on plaintiff's land was willful."

Judgment was awarded appellant on two distinct items of damages, expressly stated in the findings of fact, conclusions of law and judgment, seriatim: (1) $1,500 as the reasonable cost of removing the 12 piles of debris from appellant's property, and (2) $1 for diminution in the value of appellant's land.

Mr. Guay appeals this judgment, insisting that treble damages as to both items are mandatory under the provisions of RCW 64.12.030, which reads:

"Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, or on the street or highway in front of any person's house, village, town or city lot, or cultivated grounds, or on the commons or public grounds of any village, town or city, or on the street or highway in front thereof, without lawful authority, in an action by such person, village, town or city against the person committing such trespasses or any of them, if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be."

Appellant urges that the court's findings, by their very language, exclude the idea of mitigation as declared in RCW 64.12.040, as follows:

"If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, or that such tree or timber was taken from uninclosed woodlands, for the purpose of repairing any public highway

or bridge upon the land or adjoining it, judgment shall only be given for single damages."

Appellant asserts that cutting the swath across his land reduced the market value of all lots planned when the 40 acres are platted according to the contour or curvilinear method—at three lots to the acre—in the amount of $400 each. The actual damage thus claimed is $48,000. He urges trebling this amount, and likewise pleads for trebling the actual cost of removal, $1,435.20. Total damages of $148,-305.60 are thus claimed. Mr. Guay appeals from the denial of treble damages.

Appellant invites our attention to *Mullally v. Parks,* 29 Wn. (2d) 899, 190 P. (2d) 107, as authority for the proposition that treble damages are mandatory for a wilful trespass such as this, and we agree that the measure of damages directly related to the cutting down, defacing or mutilation of any shrub, tree or timber is treble the amount of the actual damage. And, in stating the purpose of the statute as twofold, to punish a voluntary offender and also to provide, by trebling the actual present damages, a rough measure for future damages, as was done in *Harold v. Toomey,* 92 Wash. 297, 158 Pac. 986, we are aware of the statute's third and additional purpose: To discourage persons from carelessly or intentionally removing another's merchantable shrubs or trees on the gamble that the enterprise will be profitable if actual damages only are incurred. One ought not to be able to create a profitable buyer-seller relationship, wilfully or carelessly, where the seller is neither consulted nor willing.

Though it does review the treble-damage cases, *Grays Harbor Cy. v. Bay City Lbr. Co.,* 47 Wn. (2d) 879, 289 P. (2d) 975, is inapplicable here. The principal purpose of discussing treble damages in that case is to show the restraint imposed by law upon penal or punitive damages, and to demonstrate that they will not be allowed except in circumstances made mandatory by statute. The *ratio decidendi* of the *Grays Harbor Cy.* case, *supra,* supports the final ruling that, where no bad faith intervened, the value

of converted timber should be its stumpage value in the woods and not its converted value at the millsite.

Respondent gas company, likewise relying upon *Grays Harbor Cy. v. Bay City Lbr. Co., supra,* argues that the trial court's finding of negligent entry, under the mistaken belief of a right conferred by easement, constitutes a finding of negligence and, therefore, cannot mean wilfullness; that the finding that the negligent manner of obtaining the easement and the entry thereunder was in this respect wilful is a contradiction in terms; that these terms are mutually exclusive, for, if something is done negligently, it is not done wilfully. Respondents cite familiar statements of principles at 94 C. J. S. 624 and 38 Am. Jur. 646.

Further discussion of the treble-damage cases, such as *Ross v. Norton,* 36 Wn. (2d) 835, 221 P. (2d) 476; *Jorgensen v. Johnson,* 194 Wash. 703, 77 P. (2d) 374; *Fredericksen v. Snohomish Cy.,* 190 Wash. 323, 67 P. (2d) 886, 111 A.L.R. 75; and *Gardner v. Lovegren,* 27 Wash. 356, 67 Pac. 615, is not indicated, for the findings of fact come to us without challenge and should, therefore, be accepted by us as presenting a true picture of what occurred. Neither party having sent up a statement of facts, the pattern of events and circumstances are deemed locked in by the findings of fact as promulgated by the trial judge. *Rutter v. Rutter,* 59 Wn. (2d) 781, 370 P. (2d) 862; *Clark v. Fowler,* 58 Wn. (2d) 435, 363 P. (2d) 812; *Michielli v. United States Mortgage Co.,* 58 Wn. (2d) 221, 361 P. (2d) 758; *In re Hollibaugh v. Prosser,* 58 Wn. (2d) 18, 360 P. (2d) 737; and *Fain v. Nelson,* 57 Wn. (2d) 217, 356 P. (2d) 302.

The trial court found as a fact that the trespass came under the treble-damage provisions of RCW 64.12.030, as urged by appellant. It likewise found that the trespass was neither casual nor involuntary, nor committed upon probable cause so as to avoid treble damages under RCW 64.12.040. But the court also found as a fact that once the debris was removed no damage whatever was sustained, not to growing trees, timber and shrubs or to the land itself. Thus, we have a trespass recognized by the court

to be appropriate to the awarding of treble damages, but no injuries cognizable by the statute to be trebled.

The reasonable cost of removing the debris, $1,500, unchallenged as it is here, is not in compensation for any of the injuries contemplated by RCW 64.12.030. To illustrate, if the gas company had bulldozed a path for its pipeline and left piles of rocks on the right of way, we hardly think their removal would come within the statute relating to damages occasioned by injury to growing timber, trees or shrubs. Here the court found that the only measurable injury caused by the trespass was the reasonable cost of removing the 12 piles of debris. When the court allowed damages of $1 for injury to the land, it was but a way of allowing costs for an otherwise harmless trespass. It thereby denounced the wrong, but it found no hurt. Zero multiplied by three would still be zero. *De minimis non curat lex*.

Affirmed.

OTT, C. J., HILL, ROSELLINI, and HUNTER, JJ., concur.