[No. 37371.   Department One.   June 17, 1965.]

CATHERINE SMITH et al., *Respondents,* v. EARL E. SHIFLETT
et al., *Appellants.**

*Witherspoon, Kelley, Davenport & Toole,* by *E. Glenn
Harmon* and *Hancock & Kohls,* by *B. E. Kohls,* for appellants.

*Richard A. Perry,* for respondents.

*Reported in 403 P.2d 364.

HILL, J.—This is another case of trespassing loggers cutting timber and seeking to avoid the statutory treble damages[1] by urging that they did not know they were trespassing. It also involves the issue of the measure of damages to be paid by the mill which bought the timber from the loggers and thereby became responsible in conversion.

The purposes for which our treble damage statute was enacted are stated in *Guay v. Washington Nat. Gas Co.*, 62 Wn.2d 473, 476, 383 P.2d 296 (1963), one of them being:

> To discourage persons from carelessly or intentionally removing another's merchantable shrubs or trees on the gamble that the enterprise will be profitable if actual damages only are incurred. One ought not to be able to create a profitable buyer-seller relationship, wilfully or carelessly, where the seller is neither consulted nor willing.

In short, that there should be no self-created right of eminent domain.

The findings of the trial court—that the timber cut (38,-320 board feet of Ponderosa Pine and 1,070 board feet of Douglas Fir) by the defendant Earl E. Shiflett (as the agent of the defendants, Philip A. Cook and George A. Brown) belonged to the plaintiffs—are supported by sub-

---

[1]"Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, or on the street or highway in front of any person's house, village, town or city lot, or cultivated grounds, or on the commons or public grounds of any village, town or city, or on the street or highway in front thereof, without lawful authority, in an action by such person, village, town or city against the person committing such trespasses or any of them, if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be." RCW 64.12.030.

"If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, or that such tree or timber was taken from uninclosed woodlands, for the purpose of repairing any public highway or bridge upon the land or adjoining it, judgment shall only be given for single damages." RCW 64.12.040.

stantial evidence. It is undisputed that it was ultimately delivered to the defendant Deer Park Pine Industry, Inc. (hereinafter called Deer Park), at a place where Deer Park took possession of the timber for shipment to its mill, and thereby became an innocent converter.

The hotly controverted issue, in both the trespass and conversion phases of this case, is not whether the plaintiffs should be paid for their timber, but how much.

The net stumpage market value of the timber cut was found to be $12.50 per thousand board feet for the Pine and $6.00 per thousand board feet for the Fir; a total of $485.42. The issue between the plaintiffs and the loggers was whether the stumpage value should be trebled ($1,456.26).

The trial court found, and there was substantial evidence to sustain the finding, that the value of the timber when delivered to defendant Deer Park was $32.50 per thousand board feet, or a value at the time of its conversion by Deer Park of $1,251.82.[2] The issue between the plaintiffs and Deer Park was whether the recovery should be the stumpage value ($485.42), or the value after it had been skidded, loaded, and hauled to the railroad.

The difference of the maximum amount claimed by the plaintiffs against the loggers ($1,456.26) and the maximum amount claimed against Deer Park for the conversion ($1,251.82) accounts for the form of the judgment, i.e., a judgment against all defendants for the smaller amount $1,251.82, and against the loggers for an additional amount of $204.44 to bring it, as against them, to $1,456.26. (The loggers were primarily liable, and Deer Park was to have subrogation against them, if it paid the part of the judgment for which is was liable.)

██  It is clear that treble damages will be imposed upon trespassers cutting timber under RCW 64.12.030, unless

---

[2]This figure is arrived at by multiplying only the 38,320 board feet of Pine by $32.50 ($1,245.40) and taking 1,070 board feet of Fir at $6.00 ($6.42), or a total of $1,251.82. This was because the trial court held that the plaintiffs' pleadings restricted them to $6.00 per thousand board feet on the Fir.

those trespassing exculpate themselves under the provisions of RCW 64.12.040. It must be made to appear that the trespass was casual or involuntary, or that

> the defendant had probable cause to believe that the land on which such trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, . . . . RCW 64.12.040.

*Fredericksen v. Snohomish Cy.*, 190 Wash. 323, 67 P.2d 886, 111 A.L.R. 75 (1937). If the defendants come within the protection of RCW 64.12.040, the judgment shall be for single damages.

On the other hand, Deer Park stands in the position of being an innocent purchaser from the loggers who cut and converted the timber of the plaintiffs to their own use. Whether Deer Park is liable to the plaintiffs for the value of the timber at the time of the conversion by the loggers, *i.e.*, stumpage value, or the value of the timber at the time of Deer Park's conversion, *i.e.*, when it acquired the timber from the loggers, depends on whether the original conversion by the loggers was willful. *Grays Harbor Cy. v. Bay City Lbr. Co.*, 47 Wn.2d 879, 289 P.2d 975 (1955); *Watkins v. Siler Logging Co.*, 9 Wn.2d 703, 116 P.2d 315 (1941). The rule, as stated in the former case, is as follows: In an action for conversion, a subsequent converter does not have the right to deduct the value added by the labor and expenditure of the original converter, when the original conversion was willful, and this rule applies even though the subsequent converter is an innocent purchaser for value.

Thus, in logging cases, if the willful conversion by the logger is established, the mill would be liable for the value of the timber at the time it acquired possession, and the logger would be liable for treble damages.[3]

In the present case, the trespass having been established,

---

[3]This does not imply that the owner is paid twice for his timber, though he would be entitled to judgment against the loggers and the mill for different amounts and to the ultimate recovery of the highest of the two figures. Liabilities, as between the loggers and the mill, are adjusted in the judgment, as was done in this case.

the trier of the facts was clearly convinced that the trespass was neither casual nor involuntary.

The defendant Shiflett, who actually cut the timber while operating in several different sections, never made any pretense of making a survey; nor did he attempt to find out who owned the land where he was cutting. Shiflett said that the one person (an ostensible owner) who gave him instructions where to cut, told him to cut everything beyond a certain gate. The first tree he cut was a quarter of a mile beyond the gate, and he was immediately advised by one of the plaintiffs (Warren Olson) that the tree belonged to the plaintiffs and that they owned land in that area. This was adequate to put defendant Shiflett on notice that the ostensible owner, who had given him his only instructions (and who never testified and was never proved to be an owner) did not know where the property lines were, and that he (Shiflett) would be proceeding at his own risk in cutting any timber without further investigation. (It is true that the plaintiff Olson did not at that time know the property lines of the plaintiffs with any degree of exactness, but he certainly was not telling Shiflett where he could cut.) Shiflett just moved a half or three-quarters of a mile east and cut 30 more trees without any further investigation.

The best that can be said for Shiflett is that he didn't deliberately cut the trees, knowing them to belong to the plaintiffs; but he proceeded without making any survey, or any adequate investigation, and without probable cause to believe that the trees being cut were on land where he had authority to be.

We have had occasion to hold that obviously inadequate surveys were not evidence of good faith. *Blake v. Grant*, 65 Wn.2d 410, 397 P.2d 843 (1964); *Heybrook v. Index Lbr. Co.*, 49 Wash. 378, 95 Pac. 324 (1908); and that evidence of willfulness may be established by circumstantial evidence. *Fredericksen v. Snohomish Cy.*, supra; *Harold v. Toomey*, 92 Wash. 297, 158 Pac. 986 (1916).

The trespass being neither casual nor involuntary, Shiflett did not bring himself within the letter or the spirit of RCW 64.12.040; and we are satisfied that the trial court was correct in concluding that the trespass was within the terms of RCW 64.12.030 and that treble damages should be imposed on the loggers.

On the conversion phase of the case, the trial court made no express finding that the original trespass and conversion were willful. However, the trial court did find that the loggers in their cutting operations "acted with wanton disregard for the rights of plaintiffs."

We correctly stated the rule in these cases when, in *Grays Harbor Cy. v. Bay City Lbr. Co., supra,* we said:

> Because the rule allowing a higher measure of damages in cases of willful conversion is in conflict with our frequently expressed policy with regard to punitive damages, it should be strictly limited in its application to those situations in which the *mala fides* of the defendant's act is proven by a preponderance of the evidence. That is, it should be shown that the defendant either intended to deprive the plaintiff of his property or, having knowledge of facts sufficient to put him on notice of the plaintiff's ownership, acted in reckless disregard of the probable consequences. (p. 886)

Certainly, the loggers here acted in reckless disregard of the probable consequences, and a willful conversion may be implied therefrom. As pointed out in both *Mullally v. Parks,* 29 Wn.2d 899, 910, 190 P.2d 107 (1948), and *Fredericksen v. Snohomish Cy., supra,* at p. 326,

> While it is necessary, under the cases referred to, that there be some element of wilfulness, it is not necessary to prove intent on the part of the trespasser.

to establish willfulness.

The judgment appealed from is in all respects affirmed.

OTT and HUNTER, JJ., and BARNETT, J. Pro Tem., concur.

ROSELLINI, C. J. (dissenting)—In the case of *Grays Harbor Cy. v. Bay City Lbr. Co.,* 47 Wn.2d 879, 289 P.2d 975, cited by the majority, we pointed out very clearly that treble damages are punitive damages and are not favored

by the courts, and said that the rule allowing a higher measure of damages in cases of willful conversion should be strictly limited to those situations in which the *mala fides* of the defendant's act is shown by a preponderance of the evidence. We also observed that the fact that a survey is not made is not in itself conclusive evidence of *mala fides*.

The evidence in this case disclosed that the employers of the defendant loggers pointed out the boundaries of the property to be logged. While they were in the process of cutting trees, they were approached by Olson, who told them they had just cut a tree on his property and stated that his property ran a mile north from that point. The loggers withdrew from that area and did no further logging beyond the boundary which he had indicated.

The trees, the cutting of which was the trespass giving rise to this action, were not located beyond that boundary but were in an area which Olson made no claim to at the time he talked to the loggers. In fact, he did not know at that time that he was the owner of this isolated piece of land. The trial court held, however, that the fact that Olson had notified the defendant loggers that he owned other designated land in the area was sufficient to put them on notice that he owned additional land, although he did not claim it at the time.

I do not believe this evidence is sufficient to support a finding of bad faith on the part of the loggers. I do not think that notice of a claim to "Tract A" can be said to be notice of a claim to "Tract B." The evidence was that the loggers acted in good faith and did not attempt to cut any trees within the area which Olson had told them was his property, but carefully avoided that area. It certainly cannot be said that Olson gave them notice that he claimed property which, at that time, he himself did not know that he owned.

In my opinion, this case is very much like the *Grays Harbor* case. While the defendants may have been negligent in not having a survey made, they were not willful trespassers; and they did not have knowledge of facts sufficient

to put them on notice of an adverse claim to the trees which are the subject matter of this law suit.

In my opinion the only reasonable inference to be drawn from the evidence is that the cutting of the trees was done with probable cause to believe that they were the property of the defendants' employers.

I would reverse the finding of willful trespass and order the awarding of compensatory damages only.

August 20, 1965. Petition for rehearing denied.