173 P.3d 959 (2007)
HAPPY BUNCH, LLC, a Washington limited liability company, Appellant,
v.
GRANDVIEW NORTH, LLC, a Washington limited liability company; John Doe and Jane Doe, husband and wife, and the marital community composed thereof, d/b/a Puget Sound Logging & Tree, Respondents.
No. 58975-0-I.
Court of Appeals of Washington, Division 1.
December 3, 2007.
*961 Craig Elarth Cammock, Attorney at Law, Mount Vernon, WA, for Appellant.
William Boyd Foster III, Attorney at Law, Lynnwood, WA, for Respondents.

PUBLISHED OPINION
DWYER, J.
¶ 1 Happy Bunch, LLC appeals from a judgment in its favor against Grandview North, LLC, contending that Happy Bunch was awarded insufficient damages. Happy Bunch successfully sued Grandview pursuant to Washington's timber trespass statute, RCW 64.12.030, after Grandview wrongfully directed loggers to cut down 12 large trees on or near the border between Grandview's property and land owned by Happy Bunch. Happy Bunch asserts that the trial court erred by ruling that Happy Bunch had not acquired title to the land under the trees by virtue of adverse possession, that Happy Bunch was only entitled to recover damages for injury to those portions of the trees growing on its land, that Happy Bunch was only entitled to recover additional restoration damages in the amount of the $2,500 cost of grinding out the tree stumps, and that RCW 64.12.030's treble damages provision did not apply because the trees were growing on or across the common property line. Finding that the treble damages provision of RCW 64.12.030 is applicable to Happy Bunch's claim, we reverse the trial court's ruling on that issue. In all other respects, we affirm the decisions of the trial court.

FACTS
¶ 2 The Wong family owns land in Mount Vernon, Washington, through its limited liability company, Happy Bunch. Grandview is a property development company solely owned and managed by Scott Wammack. On September 6, 2002, Grandview purchased a parcel of property adjacent to the Happy Bunch property in order to construct a Wienerschnitzel drive-through restaurant. The city of Mount Vernon building code required that approximately four feet of fill be placed onto the Grandview property as part of the planned development.
¶ 3 At the time of Grandview's purchase, 12 mature trees stood either on or near the boundary line between the Happy Bunch and Grandview properties. Some portion of the trunks of 10 of the trees extended from the Happy Bunch property onto the Grandview property. The trial court found that because the center of most of the trees lay on the Happy Bunch side of the boundary line, it is likely that all of the trees were originally planted on Happy Bunch's property. From the time the Wongs purchased their property in 1985, they maintained the trees and the area around them.
¶ 4 Wammack did not believe that Grandview could meet the city's fill requirement without constructing a retaining wall along the Happy Bunch/Grandview property line. Because the roots and trunks of the trees extended onto Grandview's property, Wammack believed that they would interfere with the construction of the retaining wall. Accordingly, he decided to remove the trees. From a survey taken around the time Grandview purchased its property, Wammack knew that 10 of the trees were located on the Happy Bunch/Grandview property line and that the remaining two trees were located entirely on Happy Bunch's property.
*962 ¶ 5 On September 24, 2002, Wammack contacted Lester Wong by telephone. Without disclosing the existence of the survey, Wammack informed Wong that he wanted to remove the trees and offered to install a fence in their place. Lester Wong did not agree to Wammack's proposal.
¶ 6 The next day Wammack again telephoned Lester Wong. During this conversation, Wammack indicated that Grandview's attorney had advised him to cut down the trees without obtaining the Wongs' permission. Lester Wong did not acquiesce to the removal of the trees. Instead, on September 26, 2002, Lester Wong independently engaged a surveyor to perform a rush survey of the boundary line. The surveyor hired by the Wongs, John Semrau, completed his survey on September 27. The Semrau survey agreed with the conclusions of the earlier survey obtained by Grandview that most of the trees were located on the boundary line between the two parcels.
¶ 7 Early the following Monday, September 30, Wammack again contacted Lester Wong to discuss removal of the trees. Lester Wong informed Wammack of the results of the Semrau survey and once again denied Wammack permission to remove the trees.
¶ 8 Nevertheless, Wammack immediately directed loggers to cut down the trees. Upon learning of the cutting, Lester Wong went to the site, demanded that the cutting cease and called the Mount Vernon police. By the time a police officer arrived, the loggers had removed the nine easternmost trees along the boundary line. That day and the next, Happy Bunch's attorney sent letters, both to Grandview and Grandview's attorney, demanding that no further tree cutting take place.
¶ 9 Nevertheless, Wammack, after waiting until the Wongs were away, and at some point prior to October 11, directed the loggers to remove the remaining trees and grind those portions of the stumps located on the Grandview side of the property line. Pursuant to Wammack's direction, the loggers left intact those portions of the stumps on the Happy Bunch side of the property line.
¶ 10 Happy Bunch then filed this action, claiming that it had acquired title to the land under and around the trees by adverse possession due to the Wongs' maintenance of the trees and surrounding area. It also sought damages for both the value of the cut trees and the estimated $15,065 cost of digging up the trees' root systems and repairing damage to the Wongs' driveway likely to be sustained as a result. Happy Bunch also requested that the entire award be trebled pursuant to RCW 64.12.030, thus seeking a total damage award of $168,294.
¶ 11 The trial court ruled that Happy Bunch had not proved that it had acquired the land under the trees by adverse possession. However, the court did find that Grandview committed timber trespass, as defined by RCW 64.12.030, "by cutting the trees on the Wong/Grandview property line." The parties stipulated that the method used by Happy Bunch's expert arborist, Jim Barborinas, accurately assessed the value of the cut trees. The parties also stipulated to the gross value arrived at by Barborinas, $40,033.
¶ 12 In reaching its decision as to the amount of recoverable damages, the trial court utilized the Semrau survey to determine the percentage of the cut trees that had been growing on Happy Bunch's property. It then multiplied this percentage by the total stipulated gross value of the trees. This resulted in an award of $32,519.22 to Happy Bunch on its timber trespass claim.
¶ 13 In addition, the trial court concluded that Happy Bunch was entitled to recover $2,500 for the cost of grinding out the remainder of the stumps but was not entitled to recover the $15,065 cost of completely removing the trees' root systems and repairing the resulting damage. Finally, the trial court ruled that Happy Bunch was not entitled to treble damages as provided by the timber trespass statute "[b]ecause the trees that were cut straddled the common property line."

DISCUSSION

Standard of Review
¶ 14 We review questions of statutory interpretation and claimed errors of law *963 de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9, 43 P.3d 4 (2002). Where the relevant facts are undisputed and the parties dispute only the legal effect of those facts, the standard of review is also de novo. Hogan v. Sacred Heart Med. Ctr., 101 Wash.App. 43, 49, 2 P.3d 968 (2000). Whether adverse possession has been established by the facts as found by the trial court is a question of law, which we review de novo. Bryant v. Palmer Coking Coal Co., 86 Wash.App. 204, 210, 936 P.2d 1163 (1997).[1]

Adverse Possession
¶ 15 Happy Bunch first assigns error to the trial court's determination that Happy Bunch did not meet its burden of proving that it "adversely possessed the area around the trees, their stumps, and roots." Happy Bunch contends that, because the trial court found that "[t]he Wongs had maintained the trees and the spaces in between the trees by mowing, weeding, trimming and otherwise caring for the area since 1985," and that "[n]o evidence was submitted that Grandview or its predecessors maintained the trees or the spaces in between the trees," the trial court was required to adopt the legal conclusion that Happy Bunch had acquired title to the land under and around the trees as a result of adverse possession. We disagree.
¶ 16 To establish a claim of adverse possession, the claimant's possession must be proved to be (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. ITT Rayonier, Inc. v. Bell, 112 Wash.2d 754, 757, 774 P.2d 6 (1989). Each of the necessary elements must exist for 10 years. RCW 4.16.020; ITT Rayonier, 112 Wash.2d at 757, 774 P.2d 6. The party claiming adverse possession has the burden of proof as to each element. ITT Rayonier, 112 Wash.2d at 757, 774 P.2d 6. "A claimant can satisfy the open and notorious element by showing either (1) that the title owner had actual notice of the adverse use throughout the statutory period or (2) that the claimant used the land such that any reasonable person would have thought he owned it." Riley v. Andres, 107 Wash.App. 391, 396, 27 P.3d 618 (2001). Hostility requires "that the claimant treat the land as his own against the world throughout the statutory period." Chaplin v. Sanders, 100 Wash.2d 853, 860-61, 676 P.2d 431 (1984).
¶ 17 The trial court's findings of fact do not mandate the legal conclusion that the Wongs' use of the area around the trees proved adverse possession by Happy Bunch. The findings do not declare the extent to which the Wongs maintained the trees and the area around them, nor do they declare a factual basis for concluding that the Wongs' treatment of the land was such that Grandview or its predecessors either should have concluded or did conclude that Happy Bunch acted as would owners of the trees or the area around them. In addition, there is no finding either as to whether the Wongs' use was permissive or whether they actually "treat[ed] the land as [their] own." Chaplin, 100 Wash.2d at 860-61, 676 P.2d 431. In fact, the findings of fact are devoid of any finding in Happy Bunch's favor on the issues of "open and notorious" or "hostile" possession. Because Happy Bunch has not provided us with a verbatim report of proceedings, we are unable to review the evidence produced at trial. Thus, our review is limited to a review of the findings of fact, as entered by the trial court. The findings of fact entered by the trial court do not establish that Happy Bunch met its burden of proving its adverse possession claim. The decision of the trial court is affirmed.

Measure of Damages under RCW 64.12.030
¶ 18 In its brief, Grandview strenuously asserts that it has no liability to Happy Bunch and that, regardless of how ownership of boundary line trees is characterized, *964 either neighboring landowner can remove the trees without obtaining the permission of the other. However, given that Grandview did not file a notice of appeal, it may not obtain affirmative relief in this court. Thus, we may not disturb the trial court's determination of Grandview's liability under RCW 64.12.030.[2] Insofar as Grandview's assertions bear on Happy Bunch's challenge to the trial court's calculation of damages, however, we address the application of RCW 64.12.030 to boundary line trees in circumstances in which the parties have stipulated to the value of the cut trees as the measure of damages.[3]
¶ 19 In most jurisdictions, a tree standing on a common property line is considered the property of both landowners as tenants in common. See, e.g., Patterson v. Oye, 214 Neb. 167, 333 N.W.2d 389 (1983); Ridge v. Blaha, 166 Ill.App.3d 662, 117 Ill.Dec. 629, 520 N.E.2d 980 (1988); Higdon v. Henderson, 304 P.2d 1001 (Okla.1956); Cathcart v. Malone, 33 Tenn.App. 93, 229 S.W.2d 157 (1950). However, courts in other states have held that a tree planted on one parcel which grows across a boundary line does not automatically become common property but, rather, becomes so only if both landowners treat it as such pursuant to either an expressed agreement or a course of conduct. See Garcia v. Sanchez, 108 N.M. 388, 772 P.2d 1311 (1989); Holmberg v. Bergin, 285 Minn. 250, 172 N.W.2d 739 (1969).
¶ 20 In its briefing Happy Bunch discusses two different approaches to the question of how damages should be measured and contends that the trial court erred by adopting the wrong approach. Citing Doran v. Rugg, 22 Conn.Supp. 189, 192, 164 A.2d 859 (1960), Happy Bunch admits that courts commonly calculate damages based on the value of each cut tree, apportioned according to the percentage of the tree that was located on the injured landowner's property, the approach taken by the trial court in this case. Happy Bunch, however, contends that the proper approach, applied in Rhodig v. Keck, 161 Colo. 337, 421 P.2d 729 (1966), is that, absent a showing of an agreement to the contrary, a boundary line tree belongs entirely to the party on whose land the tree was originally planted, with damages calculated accordingly.
¶ 21 We view Doran as the more persuasive authority. Doran involved the application of a treble damage statute similar to RCW 64.12.030 to the wrongful cutting of ornamental boundary-line trees. Doran, 164 A.2d at 861. In contrast, as the Rhodig court itself noted, Rhodig was "not a true boundary line case" at all. Rhodig, 421 P.2d at 730. In Rhodig, the landowners seeking to prevent the cutting did not own the land upon which the trees had been originally planted. In addition, the placement and history of the trees was significantly more well *965 known than in the present case.[4]Rhodig, 421 P.2d at 730. Both the facts and the statute at issue in Doran are closer to those presented to the trial court herein than are those discussed in Rhodig.
¶ 22 More importantly, Rhodig's reasoning is not compelling. The basis for the Rhodig decision was more fully articulated in Garcia as being that, unless proven otherwise, trees growing across a properly line belong solely to the party that originally planted them. See Garcia, 772 P.2d at 1314-15; Rhodig, 421 P.2d at 730-31. In essence, this rule provides that the boundary between two parcels of real property shifts over time with the natural growth of trees planted along the boundary unless the party upon whose land the trees are encroaching negotiates some form of joint ownership agreement with the party on whose land the trees were originally planted. For us to hold that a Washington landowner can effect such a boundary line adjustment would be to create an entirely new theory of adverse possession without a basis in either the statutory or common law of this state. Were we to apply the theory discussed in Rhodig in the present case, we would essentially be holding that Happy Bunch acquired title to the land under the trees, notwithstanding our affirmance of the trial court's conclusion that Happy Bunch failed to prove this under the existing requirements of the law.
¶ 23 We are unwilling to recognize an entirely new theory of adverse possession under Washington law. Accordingly, we join the courts of a sister state and hold that "[a] tree, standing directly upon the line between adjoining owners, so that the line passes through it, is the common property of both parties, whether marked or not; and trespass will lie if one cuts and destroys it without the consent of the other." Patterson, 333 N.W.2d at 391 (quoting Weisel v. Hobbs, 138 Neb. 656, 294 N.W. 448 (1940)). The trees being owned in common, the trial court correctly ruled that Grandview had an interest in the trees proportionate to the percentage of their trunks growing on Grandview's property. Thus, the trial court correctly awarded Happy Bunch only that portion of the trees' value reflecting Happy Bunch's property interest in them.[5] Where a defendant violates RCW 64.12.030 by willfully cutting boundary line trees and the plaintiff seeks damages based upon the value of the cut trees, the correct measure of damages is calculated by multiplying the trees' value by the percentage of the trees' trunks that had been growing on the plaintiff's property. This was the approach taken by the trial court.
¶ 24 There was no error.

Additional Restoration Damages
¶ 25 Happy Bunch next contends that the trial court erred by refusing to enter Happy Bunch's proposed conclusion of law, which provided, in relevant part, that Happy Bunch was entitled to recover "the cost of removal and repair of the remaining stumps and root *966 systems of $15,065.00." Happy Bunch argues that the proper measure of damages for unlawful cutting of residential or ornamental trees is the restoration or replacement cost[6] and that, accordingly, the trial court erred by refusing to enter a conclusion of law accepting Happy Bunch's estimate of that cost. We disagree.
¶ 26 While Happy Bunch correctly states the law, the law does not mandate the conclusion that Happy Bunch seeks. Because Happy Bunch did not assign error to the trial court's finding of fact that "[t]he cost to the Wongs for grinding out the remaining portions of the twelve tree stumps will be $2,500," it is a verity on appeal. Nordstrom Credit, 120 Wash.2d at 941, 845 P.2d 1331; Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 808, 828 P.2d 549 (1992). Moreover, because Happy Bunch has provided no verbatim report of proceedings, our review of the trial court's conclusion of law, that Happy Bunch "has failed to establish that the replacement of the driveway serving [its] property is reasonably necessary," is limited to whether the trial court's findings of fact mandate a different result.[7]Fenton, 12 Wash.App. at 347, 529 P.2d 883. The findings of fact entered by the trial court support the conclusions of law entered by the trial court. There was no error.

Treble Damages
¶ 27 Finally, Happy Bunch assigns error to the trial court's conclusion of law that, "[b]ecause the trees that were cut straddled the common property line, Plaintiff Happy Bunch is not entitled to treble damages." Happy Bunch contends that an award of treble damages was mandatory pursuant to RCW 64.12.030 unless Grandview proved one of the mitigating factors listed in RCW 64.12.040. Therefore, Happy Bunch asserts, the trial court erred by not awarding treble damages. We agree.
¶ 28 RCW 64.12.030 provides:
Whenever any person shall cut down, girdle or otherwise injure, or carry off any tree, timber or shrub on the land of another person, . . . without lawful authority, . . . if judgment be given for the plaintiff, it shall be given for treble the amount of damages claimed or assessed therefor, as the case may be.
(Emphasis added.) RCW 64.12.040 provides:
If upon trial of [an action under RCW 64.12.030] it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, . . . judgment shall only be given for single damages.
The trespasser must allege and prove mitigation under RCW 64.12.040. Seattle-First Nat'l Bank v. Brommers, 89 Wash.2d 190, 197-98, 570 P.2d 1035 (1977). "It is clear that treble damages will be imposed . . . under RCW 64.12.030, unless those trespassing exculpate themselves under . . . RCW 64.12.040." Smith v. Shiflett, 66 Wash.2d 462, 464-65, 403 P.2d 364 (1965). The punitive aspect of the trebling provision is one that has been mandated by the legislature, not left to the discretion of the courts. Pearce v. G.R. Kirk Co., 92 Wash.2d 869, 875, 602 P.2d 357 (1979).
¶ 29 Grandview does not respond directly to this argument but, instead, merely asserts that Wammack's belief that he had the right to remove the trees, coupled with the principle that penal statutes are to be strictly construed, prevents the imposition of treble damages. It further asserts that, because he knew that the trees straddled the boundary line, Wammack had a justified belief that the *967 land from which the trees were removed was his own.
¶ 30 The opposite is true. Wammack possessed a survey that indicated that the majority of the trees were predominantly located on Happy Bunch's property, and that at least two of the trees were not located on Grandview's property at all. He nonetheless ordered the trees cut, notwithstanding the Wongs' efforts to prevent him from so doing. A mere subjective belief in the right to cut trees is not sufficient for mitigation pursuant to RCW 64.12.040. On the contrary, where a person has been given notice that another has an ownership interest in trees, and the person nonetheless cuts them down, the actor will be liable for treble damages under RCW 64.12.030. Shiflett, 66 Wash.2d at 467, 403 P.2d 364; Mullally v. Parks, 29 Wash.2d 899, 911, 190 P.2d 107 (1948).
¶ 31 The purposes underlying RCW 64.12.030's treble damage provision support this conclusion. These purposes are:
[T]o punish a voluntary offender and also to provide, by trebling the actual present damages, a rough measure for future damages, . . . [as well as t]o discourage persons from carelessly or intentionally removing another's merchantable shrubs or trees on the gamble that the enterprise will be profitable if actual damages only are incurred.
Guay v. Washington Natural Gas Co., 62 Wash.2d 473, 476, 383 P.2d 296 (1963). Put another way, the legislature intended, "[i]n short, that there should be no self-created right of eminent domain." Shiflett, 66 Wash.2d at 463, 403 P.2d 364. Private condemnation of another's property in the course of business succinctly characterizes Grandview's actions here. It had full knowledge that the trees were, to varying degrees, growing on Happy Bunch's property, yet proceeded to have them removed anyway, gambling that it would at most be forced to pay Happy Bunch their value. Grandview knowingly and willfully cut trees belonging, at least in part, to another. The legislature has mandated that in such circumstances the court has no discretion to award other than treble damages.
¶ 32 Happy Bunch correctly construes both the text and purpose of the statute. Both the punitive and compensatory policies underlying the statute are implicated with respect to boundary line trees. We remand this case to the trial court with directions that it amend its judgment in accordance with this opinion.[8]
¶ 33 Affirmed in part, reversed in part, and remanded.
WE CONCUR: SCHINDLER, A.C.J., and AGID, J.
NOTES
[1] Happy Bunch has not provided a verbatim report of proceedings. Where an appellant fails to supply a verbatim report of proceedings and challenges only the trial court's conclusions of law, the findings of fact are treated as verities on appeal. Nordstrom Credit, Inc. v. Dep't of Revenue, 120 Wash.2d 935, 941, 845 P.2d 1331 (1993). Moreover, Happy Bunch has not assigned error to any finding of fact. Thus, our review is limited to determining whether or not the conclusions of law properly follow from the findings of fact. Fenton v. Contemporary Dev. Co., 12 Wash.App. 345, 347, 529 P.2d 883 (1974).
[2] In its brief, Grandview sets forth two assignments of error. One seeks modification of the trial court's determination of liability, the other challenges the trial court's use of a survey that determined the location of the trees' trunks from a measurement taken at six feet above ground level. Grandview, however, never filed a notice of appeal. "The appellate court will grant a respondent affirmative relief . . . only (1) if the respondent also seeks review of the decision by the timely filing of a notice of appeal or a notice of discretionary review, or (2) if demanded by the necessities of the case." RAP 2.4(a). "[F]ailure to cross-appeal the superior court's judgment precludes further review" of issues decided by that court and not raised by the appellant. Erakovic v. Dep't of Labor & Indus., 132 Wash.App. 762, 775, 134 P.3d 234 (2006). Given that Grandview neither filed the required notice of appeal nor independently demonstrated a basis for relieving it of the requirements of RAP 2.4, it may not obtain affirmative relief in this appeal. Thus, we construe the assignments of error and the accompanying arguments Grandview presents as urging affirmance of the trial court's judgment. To the extent that Grandview's arguments are not designed to urge affirmance, we decline to address them.
[3] The standard measure of damages for the loss of ornamental trees in actions brought pursuant to RCW 64.12.030 is either the restoration cost or the diminution in the value of the affected property. See Tronsrud v. Puget Sound Traction, Light & Power Co., 91 Wash. 660, 661, 158 P. 348 (1916); Sherrell v. Selfors, 73 Wash.App. 596, 602-03, 871 P.2d 168 (1994). Here, the stipulated-to value was arrived at by use of the "Trunk Formula Method." Because Happy Bunch has not provided a verbatim report of proceedings and neither the trial court's findings of fact nor its conclusions of law explain the methodology of the "Trunk Formula Method," we will refer simply to the "value" of the trees.
[4] The trial court's sole finding of fact regarding the original placement of the trees is that "[b]ecause the centers of most of the 12 trees lay on the Wong side of the boundary line, it is reasonable to infer that most, if not all, of the twelve trees were originally planted on the Wong Property and have since grown across the Wong/Grandview property line into the Grandview property." This is in contrast with Rhodig, in which the history and provenance of the trees in question were a matter of record, rather than inference. See Rhodig, 421 P.2d at 730.
[5] Happy Bunch asserts that it should have been awarded the full value of the cut trees regardless of whether Grandview had an ownership interest in them because Grandview's partial grinding out of the stumps constituted "spoliation" of the evidence of the trees' locations. "Spoliation is defined simply as `[t]he intentional destruction of evidence.'" Henderson v. Tyrrell, 80 Wash.App. 592, 605, 910 P.2d 522 (1996) (quoting BLACK'S LAW DICTIONARY 1401 (6th ed.1990)). The trial court, in its discretion, may award sanctions for spoliation after weighing "(1) the potential importance or relevance of the missing evidence and (2) the culpability or fault of the adverse party." Homeworks Constr., Inc. v. Wells, 133 Wash.App. 892, 899, 138 P.3d 654 (2006). Here, the trial court entered unchallenged finding of facts as to the placement of the trees based on the testimony of Happy Bunch's own expert. Happy Bunch did not demonstrate either any difficulty in ascertaining the location of the trees or that Grandview's grinding of the stumps was motivated by a desire to obscure their location. Thus, Happy Bunch's assertion, i.e., that the trial court abused its discretion when it failed to award the entire value of the cut trees as a sanction, is without merit.
[6] See Birchler v. Castello Land Co., 133 Wash.2d 106, 111-12, 942 P.2d 968 (1997). As discussed previously, damages for the unlawful cutting of residential or ornamental trees generally are calculated either according to the diminishment of the value of the affected property or the restoration costs. See Tronsrud, 91 Wash. at 661, 158 P. 348; Sherrell, 73 Wash.App. at 602-03, 871 P.2d 168.
[7] In essence, Happy Bunch desires this court to find that the amount of restoration costs was proved to be greater than the trial court found them to be. Because Happy Bunch has neither provided us with a verbatim report of proceedings from which we could review all of the evidence nor assigned error to the trial court's factual findings, Happy Bunch cannot obtain appellate relief on this claim.
[8] Happy Bunch, as the substantially prevailing party on appeal, is entitled to an award of costs pursuant to RAP 14.2.