IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| PAUL M. BENTON and CHARLENE BENTON, husband and wife, | No. 87215-0-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| WILLIAM E. PETERSON, a single person, | |
| Respondent. | |

SMITH, C.J. — Paul and Charlene Benton and William Peterson share a property boundary line in Rockford, Washington.  Paul and the predecessor to Peterson's property, Gene Smith, erected a fence between the properties before Peterson acquired the land.  In 2018, Peterson bought the property formerly owned by Smith.  In 2020, Peterson hired a surveyor to conduct a land survey and discovered part of his property extended beyond the fence.  Peterson then removed the fence.  The Bentons sued Peterson, alleging adverse possession and trespass and filed a lis pendens.  Peterson counterclaimed, asserting trespass and clouding title.  The trial court found in Peterson's favor and awarded fees.  The Bentons appeal, claiming the trial court applied the wrong standard of analysis and incorrectly decided the adverse possession claim. We affirm.

FACTS

Paul and Charlene Benton[1] and William Peterson own neighboring properties in Rockford, Washington. Paul has lived on the Benton property for close to 70 years and became the owner in 2002 after inheriting title from his mother. Charlene moved onto the property in 1977. Peterson purchased the adjacent property in 2018. Peterson's property was previously owned by Gene Smith.

Sometime in the 1970s, Paul and Smith agreed to build a wire fence between their properties. At the time, the city owned the property on which the fence was built. In 1980, the city vacated the road by ordinance. Between the time the fence was erected and Peterson purchased the property, the property had transferred ownership three times.

In 2020, Peterson hired a land surveyor to perform a survey of his property. The property had also been surveyed in 2002. Both surveys provided the legal boundary of the respective properties, showing the property line between Peterson's and the Bentons' properties as 15 feet closer to the Bentons' property than the fence. After the survey, Peterson approached Paul about removing what was left of the fence.[2] At trial, Paul testified he told Peterson he could not remove the fence. In contrast, Peterson testified Paul told him he could

---

[1] When necessary, we refer to the parties by first name to avoid confusion.

[2] The Bentons and Peterson had differing opinions on the state of the fence at the time of removal. Paul testified, "the last I remember it was in pretty decent shape," while Peterson testified the fence was essentially non-existent.

take down the fence. Another individual present for this conversation also testified Paul told Peterson he could remove the fence. Following this conversation, Peterson removed the remnants of the fence. The Bentons initiated a complaint against Peterson, asserting quiet title based on adverse possession and a claim for damages due to trespass. The Bentons also filed a lis pendens on the property. Peterson counterclaimed alleging trespass and clouding of title.

At trial, the Bentons argued adverse possession, wrongful trespass, and mutual recognition and acquiescence, though they had not pleaded mutual acquiescence in their complaint. Paul testified the fence was built to serve as a boundary line and keep Smith's goats contained. Both Paul and Charlene testified they used the property up to the fence line as a garden until the previous year. They said they mowed and tilled the area every two weeks and collected vegetables and flowers. But, the Bentons produced no pictures of the garden or fence, nor did they provide any other evidence the garden existed or that they maintained the property to the fence line. Other than the Bentons' testimony, no evidence at trial established the fence was meant to serve as a boundary as opposed to a barrier.

The trial court found no credible evidence existed establishing the fence was intended to be or recognized as a boundary, as opposed to a barrier, by Smith or any subsequent owners of the land. Furthermore, no evidence existed to support a conclusion that the fence was maintained or used after it was constructed. The court noted that multiple witnesses testified the fence was in

3

disrepair and most of it was gone. The trial court also did not find the Bentons' testimony about their maintenance of the property credible. The court emphasized the lack of photo evidence and Paul and Charlene's conflicting testimony as to the location of the garden.

The court concluded the Bentons failed to establish adverse possession and trespass. The court also noted that, because the Bentons did not plead mutual acquiescence, it was not properly before the court. But even if it were, the court determined the Bentons did not meet their burden of proof. The court found in favor of Peterson on his clouding of title claim, but denied his claim for trespass. The court awarded Peterson attorney fees and costs. The Bentons appeal.

Analysis

Standard of Review

"Where the facts in an adverse possession case are not in dispute, whether the facts constitute adverse possession is for the court to determine as a matter of law." *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 758, 774 P.2d 6 (1989). We review questions of law de novo. *Happy Bunch, LLC v. Grandview N., LLC*, 142 Wn. App. 81, 88, 173 P.3d 959 (2007).

If a party contends a finding of fact was improperly made, the party must include a separate assignment of error for each challenged finding, including a reference by number. RAP 10.3(g). We only review a claimed error if it is "included in an assignment of error or clearly disclosed in the associated issue pertaining thereto." RAP 10.3(g). We accept unchallenged findings of fact as

verities on appeal. *Caffrey v. Chem-Ionics Corp.*, 69 Wn.2d 641, 643, 419 P.2d 809 (1966).

The Bentons do not challenge any findings of fact on appeal; therefore, we accept the trial court's findings of fact as true.

### Adverse Possession

The Bentons contend they have established adverse possession over the disputed property. Peterson maintains the Bentons failed to prove all of the required elements. We agree with Peterson.

To establish a claim of adverse possession, a party must show possession is "(1) open and notorious, (2) actual and uninterrupted, (3) exclusive, and (4) hostile." *ITT Rayonier*, 112 Wn.2d at 757. Because the holder of legal title is the presumed owner, "the party claiming to have adversely possessed the property has the burden of establishing the existence of each element." *ITT Rayonier*, 112 Wn.2d at 757. The party asserting adverse possession must establish each element by a preponderance of the evidence. *Teel v. Stading*, 155 Wn. App. 390, 394, 228 P.3d 1293 (2010). To succeed, the party must show that it has met all four elements for at least 10 years. RCW 4.16.020.

A party can satisfy the first element—open and notorious—by showing either " '(1) that the title owner had actual notice of the adverse use throughout the statutory period or (2) that the claimant used the land such that any reasonable person would have thought he owned it.' " *Happy Bunch*, 142 Wn. App. at 89 (quoting *Riley v. Andres*, 107 Wn. App. 391, 396, 27 P.3d 618 (2001)). The "hostility" element does not require "personal animosity or adversarial intent,

but instead connotes that the claimant's use has been hostile to the title owner's, in that the claimant's use has been akin to that of an owner." *Herrin v. O'Hern*, 168 Wn. App. 305, 311, 275 P.3d 1231 (2012).

The Bentons fail to prove their possession of the property was adverse by a preponderance of the evidence. Beyond their own testimony, the Bentons did not present any evidence at trial to show Smith, or any subsequent owners of the property, had actual notice of their use. Additionally, the Bentons provided no evidence that the land was continuously and exclusively used for a 10-year period. Despite testifying a garden was on the property for 50 years, the Bentons did not offer any evidence, such as pictures or testimony from neighbors, to prove the existence and maintenance of a garden. Even Paul's and Charlene's testimonies about where the garden was located were conflicting.

No evidence in the record shows the Bentons exclusively maintained the fence for the required statutory period. When Peterson moved onto the neighboring property and conducted a survey of the land, the fence was practically nonexistent. In fact, the Bentons' testimony was the only evidence presented to establish that the fence was built in the 1970s. And their testimony fails to prove that they maintained the fence as a property boundary at all, much less for the entirety of the required period.

The Bentons claim their evidence is sufficient because Peterson presents no evidence to contradict their testimony that Paul and Smith built the fence as a boundary line or that they maintained the property. But Peterson does not bear the burden of proof. The Bentons, as the party asserting adverse possession,

must establish all elements by a preponderance of the evidence. Because they fail to do so, we affirm.

### Mutual Recognition and Acquiescence

The Bentons next assert they have established title to the property through mutual recognition and acquiescence. But, they failed to plead the issue below.

RAP 2.5(a) states the court may refuse to review any claim of error which was not raised at trial, with limited exceptions. A party may raise an issue for the first time on appeal if the issue addresses a lack of trial court jurisdiction, a failure to establish facts upon which relief can be granted, or manifest constitutional error.

Here, the Bentons did not plead mutual recognition and acquiescence before the trial court and, because the issue is not one a party may raise under RAP 2.5(a), we decline to address the issue.

### Attorney Fees

Lastly, both parties request attorney fees on appeal. Because the Bentons' request is not supported by law and Peterson prevails on appeal, we grant Peterson attorney fees.

The Bentons request fees under RAP 18.9(a). Under RAP 18.9(a), a court may sanction a party for violation of the rules or filing a frivolous appeal. The Bentons provide no argument as to how Peterson violated any rules or filed a frivolous appeal. In fact, Peterson did not the file the appeal at issue here. Accordingly, we decline to award the Bentons fees.

Peterson requests fees under RAP 18.1, RCW 4.28.328(3), and RCW 7.28.083(3). Under RAP 18.1(a), applicable law may grant a party the right to recover reasonable attorney fees or expenses on review. A party requesting fees under RAP 18.1 must provide argument and citation to authority "to advise the court of the appropriate grounds for an award of attorney fees as costs." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012). RCW 4.28.328(3) provides a claimant in a lis pendens action "is liable to an aggrieved party who prevails in defense of the action . . . for actual damages caused by filing the lis pendens, and in the court's discretion, reasonable attorneys' fees and costs incurred in defending the action". Similarly, under RCW 7.28.083(3), this court has discretion to award reasonable attorney fees to the prevailing party in an adverse possession action.

Because Peterson is the prevailing party in an adverse possession claim, we award him reasonable attorney fees.

We affirm.

_Smith, C.J._____

WE CONCUR:

_Díaz, J._____          _Coburn, J._____

8