203 P.3d 1056 (2009)
Thomas TROTZER, Appellant,
v.
Gary VIG and Sherrie Vig, Respondent.
No. 36626-6-II.
Court of Appeals of Washington, Division 2.
January 13, 2009.
Publication Ordered March 24, 2009.
*1058 Peter James Nichols, Attorney at Law, Seattle, WA, for Appellant.
John Robert Bonin, Attorney at Law, Julie K. Cook, Bonin & Cook PS, Shelton, WA, for Respondent(s).
HUNT, J.
¶ 1 Thomas Trotzer, the partially-prevailing plaintiff, appeals the trial court's dismissal of his 2000 trespass action against Gary and Sherrie Vig, denial of his request for treble damages for the Vigs' 2003 timber trespass, and award of post-offer costs to the Vigs under Civil Rule (CR) 68. Trotzer argues that the trial court erred in (1) preventing him from asking leading questions of Gary Vig, an adverse party, during direct examination; (2) ruling that his 2000 trespass action against Gary and Sherrie Vig was time-barred and not subject to equitable tolling of the statute of limitations; (3) concluding that even if there was a contract, the parties resolved the breach through accord and satisfaction; (4) awarding only single, rather than treble, damages for the 2003 timber trespass under RCW 64.12.030; and (5) concluding that the Vigs' offer of judgment substantially exceeded the trial court's award to Trotzer.
¶ 2 We affirm the trial court's dismissal of Trotzer's 2000 trespass action as time-barred and the trial court's ruling that Trotzer was not entitled to treble damages for the 2003 trespass. We reverse and vacate the trial court's award of post-offer costs to the Vigs under CR 68.

FACTS

I. Trespasses

A. 2000
¶ 3 In May or June 2000, Gary Vig used a Caterpillar tractor to clear a walking trail on Thomas Trotzer's land, mistakenly believing that it was his own land. Afterwards, Trotzer and the Vigs exchanged several letters, including a notarized apology letter from the Vigs to Trotzer and Trotzer's response to that apology letter.
¶ 4 The Vigs' apology letter stated:
While making a trail/road along the west line of our property . . . we have apparently erroneously strayed onto your property. This was an honest error on our part. You have our wholehearted apology for the mistake. We want you to know that this road/trail will give us no claim whatsoever for the use of, or trespass of your property.
This road/trail has absolutely nothing to do with the real property lines and we will *1059 never make any claim whatsoever as to the use or ownership of your property. Because of the woods and swamp we still do not know exactly where the property line is, but we will take measurements as soon as it dries out, to determine where the property line is located. In the future, we will never do any work near the property line without first consulting with you.
Exhibit (Ex.) 32.
¶ 5 Trotzer's response stated:
I received your notarized letter of June 13, 2000, pertaining to the property line discrepancies and accept the letter and it's [sic] intent fully as resolve of the situation.
Thank you, for your prompt attention to the matter, and looking forward to having you as neighbors.
Ex. 3.

B. 2003
¶ 6 During the winter of 2002, the Vigs and Trotzer met by chance and conversed at the local Wal-Mart. According to the Vigs, they informed Trotzer that they intended to extend the walking path on their own property and Trotzer told them that the fence was the property line. According to Trotzer, he never told the Vigs that the fence was the property line.
¶ 7 In the summer of 2003, Gary Vig extended the walking path. According to Vig, he relied on Trotzer's statement that the fence was the property line when he extended the trail, doing his best to stay on his own property.
¶ 8 Sometime later, Trotzer hired Sidney Bechtolt to perform a survey, which Bechtolt recorded in August 2003. According to Bechtolt's survey, the fence is not the property line and at least some of the Vigs' 2003 extension of the walking path is on Trotzer's property.[1]

II. Procedure
¶ 9 On November 26, 2003, Trotzer sued the Vigs for damages resulting from their 2000 and 2003 trespasses. Trotzer's complaint did not include a quiet title action. The Vigs' answer, filed February 6, 2004, included a counterclaim for trespass for a rubbish pile that Trotzer had created partially on the Vigs' property.

A. Offer of Judgment
¶ 10 On December 1, the Vigs served Trotzer with a CR 68 offer of judgment to pay him $12,000, plus reasonable attorney fees and costs to that date. Trotzer did not accept the offer.
¶ 11 On February 20, 2004, the Vigs moved for partial summary judgment, asserting that the three-year statute of limitations governing trespass actions had run on Trotzer's claim for the 2000 trespass. Apparently, the trial court denied this motion for partial summary judgment.[2]

B. Amended Complaint
¶ 12 On March 10, Trotzer filed an amended complaint, in which he asserted a quiet title action, and a contract claim for damages arising out of the 2000 trespass. On August 5, the Vigs filed an amended answer and counterclaim. The Vigs did not submit a new CR 68 offer of judgment.

C. Bench Trial
¶ 13 At trial, Trotzer testified about: his discovery of the 2000 and 2003 trespasses; the letters that he had exchanged with the Vigs after the 2000 trespass; and his conversation with the Vigs at Wal-Mart, in which, he claimed, he never told them that the fence was the property line. Trotzer also presented two expert witnesses: (1) Forester Danny Bruner testified about the cost of replacing the trees and vegetation that the Vigs had damaged during the trespasses; and (2) Bechtolt testified about how his survey crew had located the property line and measured the areas on Trotzer's side of the property line that the Vigs had cleared or damaged in cutting the walking path in both 2000 and 2003.
*1060 ¶ 14 Trotzer called Gary Vig as a witness and attempted to ask leading questions during direct examination. The trial court sustained the Vigs' objection as to the form of the questions because the witness was not actually hostile. But Gary Vig also testified for the defense and, during the cross-examination, the trial court allowed Trotzer to ask Vig leading questions.
¶ 15 The Vigs both testified that during the conversation at Wal-Mart, Trotzer had told them that the existing fence was the property line. Gary Vig testified that he had relied on Trotzer's statement that the fence was the property line when he extended the trail and that he did his best to stay within his own property; but he admitted that he had occasionally lost sight of the fence.
¶ 16 Trotzer asserted at trial that he never told the Vigs or anyone else that the fence was the property line. To impeach Trotzer's testimony, the Vigs introduced and had Trotzer read from a declaration that he (Trotzer) had prepared for another lawsuit, in which he stated that he "share[s] a long fence line" with the Vigs. The trial court admitted the declaration over Trotzer's objection.
¶ 17 The Vigs also presented an expert witness, Ronald Gold, a forester and environmental consultant, who testified about (1) the value of the damaged timber, (2) the cost of restoring the vegetation on Trotzer's property, and (3) Trotzer's rubbish pile on the Vigs' land.
¶ 18 The trial court and the parties visited the Trotzer property so that the court could view the alleged damage from the Vigs' trespasses.

D. Judgment
¶ 19 At the end of the trial, the court concluded that the three-year statute of limitations barred Trotzer's 2000 trespass action and there was no reason to toll the statute of limitations equitably. The trial court further concluded that, even if Trotzer's 2000 trespass action could proceed under a breach of contract theory, the parties had resolved any such breach through accord and satisfaction.
¶ 20 Concluding that the Vigs had trespassed on Trotzer's land in 2003, the trial court awarded Trotzer $5340, including damages for emotional distress arising from the trespass.[3] The trial court also found that Trotzer had told the Vigs that the fence was the property line and that Gary Vig had relied on this statement when he extended the walking trail in 2003. Based on these facts, the court concluded that the Vigs had not trespassed willfully and that, therefore, Trotzer was not entitled to treble damages under RCW 64.12.030.
¶ 21 Concluding that its final judgment was not more favorable than the Vigs' offer of judgment, which Trotzer had rejected, the trial court ruled that, under CR 68, the Vigs were entitled to recoup the costs they had incurred after the date of their offer.
¶ 22 Trotzer appeals.

ANALYSIS

I. Leading Questions: Harmless Error
¶ 23 Trotzer argues that we should remand for a new trial because the trial court prevented him from asking leading questions on direct examination when he called defendant Gary Vig as a witness during the plaintiff's case in chief and, thereby, violated ER 611(c). Assuming, without deciding, that the trial court should have allowed Trotzer to ask leading questions of Vig, we hold that any such error was harmless.[4]
¶ 24 Trotzer argues that the trial court's ruling "prevented [him] from using his prepared questions and [forced him] to comply with a higher standard of demonstrating hostility than what is required by ER 611." Reply Br. of Appellant at 5. But Trotzer fails to show how this restriction on leading questions prejudiced his case such that he deserves a new trial: Trotzer has articulated no specific harm resulting from the court's ruling *1061 either in his brief or in response to our questions during oral argument.
¶ 25 Moreover, because Gary Vig again took the stand and testified during the defense case, Trotzer had and fully exercised the opportunity to ask Vig leading questions at that time. Thus, even though the trial court's ruling limited Trotzer's planned questioning of Vig during the plaintiff's case, Trotzer does not show that he was unable to ask these same prepared questions on cross examination when the defense called Gary Vig as a witness.[5]
¶ 26 Accordingly, we hold that any error in the trial court's leading question restriction was harmless and Trotzer is not entitled to a new trial.

II. 2000 Trespass
¶ 27 Trotzer next argues that the trial court erroneously concluded that the three-year statute of limitations governing trespass barred his 2000 trespass action because his claims arose out of a contract, namely a settlement agreement, for which the applicable statute of limitations is six years.[6] The Vigs counter that they did not enter into a contract with Trotzer and the three-year statute of limitations, applicable to trespass, bars Trotzer's 2000 trespass action. Agreeing with the Vigs, we hold that the parties did not form a contract and, therefore, the trial court properly ruled that the applicable three-year statute of limitations barred Trotzer's 2000 trespass claims.

A. Applicable Statute of Limitations; No Contract
¶ 28 Settlement agreements are considered to be contracts; thus, the legal principles applicable to contracts govern their construction. Stottlemyre v. Reed, 35 Wash. App. 169, 171, 665 P.2d 1383, review denied 100 Wash.2d 1015 (1983). We determine the construction and legal effect of a contract as a matter of law where there are no disputed facts. Yeats v. Estate of Yeats, 90 Wash.2d 201, 204, 580 P.2d 617 (1978). We review questions of law de novo. Sunnyside Valley Irr. Dist. v. Dickie, 149 Wash.2d 873, 880, 73 P.3d 369 (2003).
¶ 29 The party asserting the existence of a contract bears the burden of proving each essential element of the contract. Bogle & Gates, P.L.L.C. v. Holly Mountain Resources, 108 Wash.App. 557, 560, 32 P.3d 1002 (2001). The essential elements of a contract are (1) the subject matter, (2) the parties, (3) the promise, (4) the terms and conditions, and (5) consideration. Id. at 561, 32 P.3d 1002. "Consideration is any act, forbearance, creation, modification or destruction of a legal relationship, or return promise given in exchange." King v. Riveland, 125 Wash.2d 500, 505, 886 P.2d 160 (1994). In order to constitute consideration, an act or promise must be bargained for and given in exchange for the promise. Id.
¶ 30 Here, although the Vigs may have made promises to Trotzer in their notarized apology letter, the documents do not show "any act, forbearance, creation, modification or destruction of a legal relationship, or return promise" on Trotzer's part when he replied and, thus, no consideration. King, 125 Wash.2d at 505, 886 P.2d 160. Without consideration, there was no contract.[7] Because, as the trial court correctly ruled, the *1062 applicable statute of limitations is three years, it barred Trotzer's action on the 2000 trespass because he commenced it in November 2003,[8] more than three years after the Vigs' spring 2000 trespass.

B. Equitable Tolling
¶ 31 Trotzer argues that even if the three-year statute of limitations applied, the trial court erred by not allowing his 2000 trespass claim to proceed under the doctrine of equitable tolling.[9] Trotzer contends that the doctrine of equitable tolling applies because the Vigs' notarized letter contained a false assurancethat the Vigs would "never do any work near the property line without first consulting [Trotzer]." Br. of Appellant at 8-9. This argument fails.
¶ 32 When justice requires, a trial court may toll the statute of limitations; but courts should permit equitable tolling only sparingly. State v. Duvall, 86 Wash. App. 871, 875, 940 P.2d 671 (1997), review denied, 134 Wash.2d 1012, 954 P.2d 276 (1998); Finkelstein v. Sec. Prop., Inc., 76 Wash.App. 733, 739, 888 P.2d 161, review denied, 127 Wash.2d 1002, 898 P.2d 307 (1995). "The predicates for equitable tolling are bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." Millay, 135 Wash.2d at 206, 955 P.2d 791 (citing Finkelstein, 76 Wash.App. at 739-40, 888 P.2d 161).
¶ 33 The party asserting that equitable tolling should apply bears the burden of proof. Benyaminov v. City of Bellevue, 144 Wash.App. 755, 767, 183 P.3d 1127 (2008). Although we give deference to the trial court's factual determinations, we review the decision of whether to grant equitable relief de novo. See Niemann v. Vaughn Cmty. Church, 154 Wash.2d 365, 375, 113 P.3d 463 (2005). Trotzer fails to meet this burden of proof.
¶ 34 The Vigs talked with Trotzer at Wal-Mart before they extended the walking trail; therefore, their assurance in their letter that they would not take further action to extend the trail without first consulting Trotzer was not false. Moreover, Trotzer introduced no evidence of bad faith or deception by the Vigs. Therefore, as the trial court correctly ruled, equitable tolling did not apply.

III. 2003 TrespassNo Treble Damages
¶ 35 Trotzer next argues that the trial court should have awarded him mandatory treble damages for timber trespass under RCW 64.12.030 because Vig did not prove that his trespass was casual or involuntary.[10] Trotzer contends that (1) the evidence is insufficient to support the trial court's Findings of Fact 7 and 8, specifically the finding that he told Vig the fence was the property line; and (2) the findings of fact do not support the trial court's Conclusion of Law 5that Vig's 2003 trespass was not willful. Trotzer's argument fails.

A. Treble Damages
¶ 36 RCW 64.12.030 requires the trial court to treble the damages it awards to a plaintiff-victim of a timber trespass. But RCW 64.12.040 provides relief from treble damages, thus allowing the trial court to award only single damages, where it appears "that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own."[11]

*1063 B. Standard of Review
¶ 37 We review findings of fact and conclusions of law for whether substantial evidence supports the trial court's findings and, if so, whether the findings support the conclusions of law. Scott v. Trans-System, Inc., 148 Wash.2d 701, 707-08, 64 P.3d 1 (2003). Substantial evidence is defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wash.2d 169, 176, 4 P.3d 123 (2000). If the evidence satisfies the standard, we will not substitute our judgment for that of the trial court, even though we might have resolved a factual dispute differently. Sunnyside, 149 Wash.2d at 879-80, 73 P.3d 369 (citing Croton Chem. Corp. v. Birkenwald, Inc., 50 Wash.2d 684, 314 P.2d 622 (1957)).
¶ 38 We review findings of fact erroneously labeled conclusions of law as findings of fact, and we review conclusions of law labeled findings of fact as conclusions of law. Willener v. Sweeting, 107 Wash.2d 388, 394, 730 P.2d 45 (1986).

C. Findings of Fact 7 and 8Fence as the Property Line
¶ 39 Finding of Fact 7 states: "In or around the winter of the year 2002 [Trotzer] and [the Vigs] conferred at the local Wal-mart about the [Vigs'] desire to extend the trail further." Finding of Fact 8 states: "[I]n [the Wal-Mart] conversation [Trotzer] was aware an extension of the walking trail was planned and that [Trotzer] stated that the fence was the boundary line." Clerk's Papers (CP) at 12. Because Trotzer concedes in his brief that the parties did converse at Wal-Mart and that they discussed extending the walking trail, we address only whether sufficient evidence supports the trial court's finding that Trotzer told the Vigs that the fence was the property line.
¶ 40 In response to a question about a conversation with Trotzer regarding the property line, Gary Vig testified that Trotzer had told him, "[T]he fence is accurate and we don't need a survey." Report of Proceedings (RP) Vol. 2 at 291. Sherrie Vig testified that Trotzer told her that the fence was a "pretty good indication" of the property line. And during cross examination, the Vigs' counsel asked Trotzer to read from his own declaration,[12] in which he had stated about the Vigs, "[W]e share a long fence line." RP Vol. 2 at 187. Although Trotzer testified that he did not tell the Vigs that the fence was the property line, it was for the trial court to determine who was more credible, a determination we will not disturb on appeal. State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
¶ 41 We hold that the evidence is sufficient to persuade a fair-minded person that Trotzer told the Vigs that the fence was the property line, as the trial court found in Finding of Fact 8.

D. Conclusion of Law 5 Trespass Not Willful
¶ 42 Trotzer next argues that insufficient evidence supports Conclusion of Law 5that Vig's 2003 trespass was not willful and subject to treble damagesbecause Gary Vig could not actually see the fence the entire time he was extending the walking trail, the trespass was reckless and could not possibly have been in good faith. We disagree.
¶ 43 Conclusion of Law 5 provides: "[T]he trespass in 2003 was ... done in good faith reliance on the conversation in Wal-Mart and was not willful and that treble damages and attorney fees under RCW 64 are therefore not applicable." CP at 14. Whether a trespass is willful, casual, or involuntary, *1064 for purposes of RCW 64.12.040's mitigating provisions, is a question of fact. See Gibson v. Thisius, 16 Wash.2d 693, 695, 134 P.2d 713 (1943). Although characterized as a conclusion of law, we thus review the trial court's factual determination that the trespass was not willful for substantial supporting evidence. Willener, 107 Wash.2d at 394, 730 P.2d 45. We then look to see whether these facts support the trial court's legal conclusion that Trotzer was not entitled to treble damages and attorney fees under RCW 64.12.030.
¶ 44 Only Gary Vig testified about whether the 2003 trespass was willful; and according to him, it was not. During cross examination by his attorney, the following exchange took place:
Q. Mr. Trotzer told you that the fence was the property line, isn't that true?
A. Yes.
Q. You relied upon Mr. Trotzer's statement that the fence was the property line in your work in 2003, isn't that true?
A. I did.
Q. And you did your best to stay within that fence line that he told you about prior to your work in 2003, didn't you?
A. I believed that was okay.
RP Vol. 2 at 287.
¶ 45 In contrast, Trotzer presented no evidence of willfulness on the part of Vig. Instead, Trotzer relied on (1) his assertion that he never told Vig that the fence was the property line, even though he had previously declared under oath, somewhat to the contrary, that he and the Vigs "share[d] a long fence line," RP Vol. 2 at 187; and (2) his argument that the trespass was reckless because Vig never had the property surveyed yet he had cleared the trail without knowing exactly where the property line was. But the trial court implicitly found Vig credible in his testimony that he believed the fence was the property line and that he tried to stay on his side of this line when he extended the trail. We will not disturb the trial court's factual and credibility determinations on appeal. See Camarillo, 115 Wash.2d at 71, 794 P.2d 850.[13]
¶ 46 We have already held that the evidence supports the trial court's Finding of Fact 8, that Trotzer told Vig that the fence was the boundary line, and the findings of fact contained in Conclusion of Law 5, that Vig relied in good faith on Trotzer's earlier statement that the fence line was the property line.[14] We further hold that these facts support the conclusion of law that Vig had probable cause to believe he was on his own property when he extended the path in 2003,[15] thereby entitling him to RCW 64.12.040 relief from being required to pay Trotzer treble damages under RCW 64.12.030. Accordingly, we hold that the trial court properly refused to award treble damages to Trotzer under RCW 64.12.030.

IV. Offer of Judgment
¶ 47 Trotzer argues that the trial court erred in (1) ruling that the Vigs' offer *1065 of judgment exceeded the trial court's damages award because the offer did not include an offer to settle Trotzer's quiet title action;[16] and (2) deeming the Vigs the prevailing party and, therefore, entitled to $214.50 in post-offer costs under CR 68. Br. of Appellant at 7. We agree.

A. Standard of Review
¶ 48 Although the determination of the prevailing party has been described as a mixed question of law and fact, we review the trial court's determination under the error of law standard. Magnussen v. Tawney, 109 Wash.App. 272, 275, 34 P.3d 899 (2001) (citing Eagle Point Condo. Owners Ass'n v. Coy, 102 Wash.App. 697, 706, 9 P.3d 898 (2000)). We review alleged errors of law de novo. Sunnyside Valley, 149 Wash.2d at 880, 73 P.3d 369.

B. CR 68
¶ 49 CR 68 provides that (1) a defendant may make an offer of judgment at least 10 days before trial; and (2) if the plaintiff does not accept the offer, and obtains a final judgment that is not more favorable than the offer, the plaintiff must pay the costs that the defendant incurs after making the offer. The purpose of CR 68 is to encourage settlement before trial. Brader v. Minute Muffler Installation, Ltd., 81 Wash.App. 532, 535, 914 P.2d 1220 (1996), review denied, 131 Wash.2d 1013, 932 P.2d 1255 (1997).
¶ 50 Based on Trotzer's original complaint for trespass, the Vigs made a CR 68 offer of judgment on December 1, 2003, for $12,000, plus reasonable attorney fees and costs. The Vigs' offer did not mention settling any issues pertaining to title; nor did Trotzer's complaint at that time include a quiet title claim. Trotzer did not accept the Vigs' offer of judgment.
¶ 51 Several months later, Trotzer amended his complaint, adding a request that the court quiet title in his property according to the Bechtolt survey. The Vigs neither attempted to amend their previous offer nor presented Trotzer with a new offer of judgment addressing the new quiet title claim.
¶ 52 The trial court found that Bechtolt's August 2003 survey was undisputed and quieted title according to the determinations of that survey. The trial court also awarded $5340 in damages to Trotzer for the 2003 trespass and emotional distress, less $400 for the Vigs' counterclaim for the debris Trotzer had deposited on their property. Because the trial court awarded Trotzer less than the Vigs' offer of judgment, the court also awarded the Vigs $214.50 for costs that they had accrued since the time they made the offer. This was error.
¶ 53 We hold that the Vigs' offer of judgment expired when Trotzer amended his complaint to add the quiet title action and the Vigs did not renew their offer of judgment to reflect this amendment; therefore, the trial court erred in awarding the Vigs their post-offer costs under CR 68 based on the Vigs' expired offer of judgment.
¶ 54 We affirm the trial court's dismissal of Trotzer's action on the 2000 trespass as time-barred and the trial court's ruling that Trotzer was not entitled to treble damages for the 2003 trespass. We reverse and vacate the trial court's award of post-offer costs to the Vigs under CR 68.
We concur: QUINN-BRINTNALL, J., and VAN DEREN, C.J.
NOTES
[1] It is unclear from the record whether the path is entirely or only partially on Trotzer's property.
[2] The record on appeal is not clear.
[3] The trial court reduced this award by $400 for damages caused by Trotzer's rubbish-pile trespass onto the Vigs' property. Trotzer does not contest that award in this appeal.
[4] See Hoskins v. Reich, 142 Wash.App. 557, 570, 174 P.3d 1250 (error without prejudice is harmless and not grounds for reversal), review denied, 164 Wash.2d 1014, 195 P.3d 88 (2008).
[5] At oral argument, Trotzer argued that he is entitled to a new trial under our holding in Hodgins v. Oles, 8 Wash.App. 279, 505 P.2d 825, review denied, 82 Wash.2d 1002 (1973). But this case is distinguishable. In Hodgins, we held that under CR 43(b), ER 611(c)'s predecessor, an attorney may, as a matter of right, ask leading questions of an adverse witness without showing that the witness is actually hostile. 8 Wash.App. at 284, 505 P.2d 825; see Henderson v. Pennwalt Corp., 41 Wash.App. 547, 551, 704 P.2d 1256 (1985) (establishing that former CR 43(b) and current ER 611 are the same). There, we remanded for a new trial because the trial court's failure to allow the plaintiff to ask leading questions of adverse witnesses prevented him from establishing specific facts that were necessary to establish ultimate facts. 8 Wash.App. at 283, 505 P.2d 825. Such was not the case here, however.
[6] The statute of limitations for breach of a written contract is six years. RCW 4.16.040(1). The statute of limitations for waste or trespass on real property is three years. RCW 4.16.080(1).
[7] Because we hold that the parties did not enter into a contract, we do not reach the accord and satisfaction or breach of contract issues.
[8] The original complaint was signed on November 26, 2003, but was not filed with the trial court until January 23, 2004. The record does not indicate what date Trotzer served the Vigs with the complaint, which would be the relevant date for statute of limitations purposes; nevertheless, the three-year statute of limitations would have already run even by the earliest of these dates.
[9] Equitable tolling is a legal doctrine that allows a claim to proceed when justice requires it, even though it would normally be barred by a statute of limitations. See Millay v. Cam, 135 Wash.2d 193, 205, 955 P.2d 791 (1998).
[10] Treble damages are statutorily required and not left to the discretion of the court, unless the trespasser alleges and proves that the trespass was casual or involuntary under RCW 64.12.040. Happy Bunch, LLC v. Grandview North, LLC, 142 Wash.App. 81, 96, 173 P.3d 959 (2007), review denied, 164 Wash.2d 1009, 195 P.3d 87 (2008).
[11] RCW 64.12.040 provides:

If upon trial of such action it shall appear that the trespass was casual or involuntary, or that the defendant had probable cause to believe that the land on which such trespass was committed was his own, or that of the person in whose service or by whose direction the act was done, or that such tree or timber was taken from uninclosed woodlands, for the purpose of repairing any public highway or bridge upon the land or adjoining it, judgment shall only be given for single damages.
[12] Trotzer's declaration had been previously prepared for a different lawsuit. Vig used the declaration to impeach Trotzer's in-court assertion that he never told the Vigs or anyone else that the fence was the property line. The court admitted the declaration over Trotzer's objection.
[13] In his reply brief, Trotzer cites Happy Bunch, 142 Wash.App. at 95-96, 173 P.3d 959, for the proposition that "[a] mere subjective belief in the right to cut trees is not sufficient for mitigation pursuant to RCW 64.12.040." Reply Br. of Appellant at 3. In Happy Bunch, the defendant had actual knowledge, based on a survey, that the majority of the trees he intended to cut were located predominantly on his neighbor's property and that, therefore, his neighbor had an ownership interest in the trees. Happy Bunch, LLC, 142 Wash.App. at 96, 173 P.3d 959. Despite this knowledge, the defendant cut down the trees based on his subjective belief that he was allowed to cut them down because they were partially on his property. The court held the defendant liable for treble damages. Id. at 95, 173 P.3d 959.

The instant case is distinguishable. Here, Vig did not rely on his own subjective interpretation of the property line; rather, he relied on Trotzer's assertion that the fence was the property line. We reiterate that in entering Finding of Fact 8, the trial court implicitly found credible Vig's testimony that Trotzer had made this representation.
[14] We note that the trial court had the benefit of having seen where the fence stood in relation to the areas Vig cleared.
[15] Although the trial court couches its legal conclusion in different terms than the statute's, the legal conclusions in CL 5 equate with the "probable cause" language in the statute because the trial court based its conclusion on Vig's reasonable belief that the fence was the property line.
[16] The Vigs counter that the trial court's ruling was correct because they never contested the location of the property line or questioned Trotzer's title to his land. But because they neither addressed the boundary line in their offer of judgment nor entered a formal stipulation to the boundary line, this argument is not persuasive.