# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| DAVID COOKE and KELLY RATZMAN-COOKE, a married couple, | No. 51294-7-II |
| Respondents/Cross Appellants, | |
| v. | ORDER GRANTING MOTION FOR RECONSIDERATION IN PART |
| CHU-YUN TWU, an individual, | |
| Appellant/Cross Respondent. | |

The appellant/cross respondent, Chu-Yun Twu, filed a motion for reconsideration of the opinion that was filed on September 4, 2019. After review, the court finds it necessary to grant the reconsideration in part, and to make the following revisions to the filed opinion.

On page 8, line 20, the following text is removed:

> The parties ultimately agreed to a boundary line adjustment that moved the boundary up the hillside, expanding Twu's property and decreasing the Cookes' property. However, the surveyor did not delineate the new boundary line with survey stakes, and according to the Cookes, the surveyor told them that the adjusted boundary line extended several feet beyond their fence to encompass the trees.

The following text shall be inserted:

> The parties ultimately agreed to a boundary line adjustment, but the surveyor did not delineate the new boundary line with survey stakes. According to the Cookes, the surveyor told them that the adjusted boundary line extended several feet beyond their fence to encompass the trees.

On page 16, line 5, the following text is removed:

The court reasoned that the surveying and boundary line adjustment between the two properties in 2009 moved the property boundary up the hillside, expanding Twu's property and decreasing Cookes' property. The adjusted boundary placed the "[e]asement area"—the location of the cherry trees—within Twu's property. Based on these survey reports, the trial court concluded that the Cookes did not justifiably rely on an alleged incorrect statement from a surveyor.

The following text shall be inserted:

The court reasoned that due to the surveying and boundary line adjustment between the two properties and the accompanying survey reports, the Cookes did not justifiably rely on an alleged incorrect statement from a surveyor.

IT IS SO ORDERED.

_____
Glasgow, J.

We concur:

_____
Worswick, P.J.

_____
Cruser, J.

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| DAVID COOKE and KELLY RATZMAN-COOKE, a married couple,<br><br>    Respondents/Cross Appellants,<br><br>  v.<br><br>CHU-YUN TWU, an individual,<br><br>    Appellant/Cross Respondent. | No.  51294-7-II<br><br>PART PUBLISHED OPINION |

   GLASGOW, J. — David Cooke and Kelly Ratzman-Cooke sued their neighbor, Chu-Yun Twu, for interference with their view easement and to enforce the height restrictions of their view easement.  Twu brought a counterclaim for timber trespass because the Cookes had cut down one of the cherry trees on Twu's property that the Cookes believed was violating the easement.

   The trial court ruled in favor of the Cookes regarding the proper baseline for the view easement's height restrictions but declined to issue an injunction to enforce the easement because there were no ongoing violations.  The court also found that Twu's cherry trees were exempt from the easement and that the Cookes had acted willfully when they removed the tree.  The court accordingly awarded treble damages to Twu for her timber trespass claim.  The court

declined to award attorney fees and costs to Twu because it determined that neither party was the prevailing party.

Twu appeals the trial court's denial of her request for attorney fees and costs. The Cookes cross-appeal, arguing the court's findings regarding the cherry trees were not supported by substantial evidence and the court erred when it declined to issue an injunction.

In the published portion of this opinion, we affirm the denial of attorney fees and costs for Twu's timber trespass claim. In the unpublished portion of this opinion, we uphold the trial court's factual findings and affirm its conclusions of law and decision not to issue an injunction. We reverse the trial court's denial of attorney fees and costs to Twu for her defense of the interference claim. Consequently, we remand for the trial court to calculate Twu's award for attorney fees and costs for her defense of the view easement interference claim at trial. We also award Twu attorney fees on appeal regarding the Cookes' interference claim, and we deny the Cookes' request for attorney fees on appeal.

## FACTS

This case arose out of a dispute over a view easement governing two neighboring properties in Camas, Washington. The properties sit on a hill above the Columbia River, with views of the Columbia River Gorge and Mount Hood. There is vegetation on the hillside between the two properties, including several cherry trees on Twu's property.

The parties negotiated a view easement aimed at protecting the Cookes' view of the Columbia River Gorge over Twu's downhill property. The Cookes later cut down one of the cherry trees on Twu's property that they claimed was violating the view easement. This led to a dispute between the neighbors over interpretation and application of the view easement,

culminating in the Cookes filing suit in 2016. The Cookes claimed that Twu was interfering

with their rights under the view easement and requested a declaratory judgment that the height

restrictions must be measured from the lowest point of Twu's foundation. They claimed

damages not exceeding $10,000 for Twu's interference with their view. They also sought an

injunction to enforce the easement height restriction. Twu brought a counterclaim, seeking a

declaratory judgment that the height restriction should be measured from a higher point, as well

as damages for timber trespass.

Before trial, the Cookes made the following settlement offer:

> Pursuant to RCW 4.84.250-300, Plaintiffs offer to settle Defendant's Second Cause
> of Action for Timber Trespass as follows: Plaintiffs agree to pay Defendant
> $2,005.00 in exchange for a dismissal with prejudice of Defendant's Second Cause
> of Action for Timber Trespass with each side to pay its own costs and attorneys'
> fees with respect to the dismissed claim.

Clerk's Papers (CP) at 38. Twu countered with the following:

> [Y]our offer is ineffective because it does not resolve the entire action.

> Ms. Twu will accept payment in the amount of $2,002.76 to resolve all claims,
> including claims related to the view easement and timber trespass. Thus, in
> exchange for the Cookes' (1) payment to Ms. Twu in the amount of $2,002.76, (2)
> agreement to only enforce the view easement at or above the elevation of 335.32
> feet above sea level, and (3) dismissal of their claims with prejudice, Ms. Twu will
> agree to dismiss her claims with prejudice.

CP at 39. The Cookes rejected this offer, and the case proceeded to a bench trial.

The trial court ultimately decided in favor of the Cookes on the issue of the proper

baseline from which to measure the easement's height restriction, but the court ruled in favor of

Twu on the other claims, including Twu's timber trespass claim. The court awarded Twu $5,364

for that claim. The court awarded treble damages based on its findings that the Cookes knew the

tree was not on their property, Twu had not agreed to removal of the tree, and thus, the Cookes acted willfully when they cut it down.

The court denied both parties' requests for attorney fees and costs because neither was the prevailing party, reasoning that although Twu prevailed on the Cookes' interference claim and her own timber trespass claim, the Cookes had prevailed on the easement's height restriction.

Twu appeals the trial court's denial of her request for attorney fees and costs associated with her timber trespass claim.[1]

## ANALYSIS

### ATTORNEY FEES AND COSTS FOR TWU'S TIMBER TRESPASS CLAIM

Twu argues the court erred when it declined to award her attorney fees for her successful prosecution of her timber trespass claim. We hold that the trial court properly denied Twu attorney fees and costs with respect to Twu's claim for timber trespass.

Attorney fees may be recovered only when authorized by statute, a recognized ground of equity, or agreement of the parties. *Niccum v. Enquist*, 175 Wn.2d 441, 446, 286 P.3d 966 (2012). Whether a statute authorizes an award of attorney fees is a question of law reviewed de novo. *Id.*

RCW 4.84.250 through .290 authorize a trial court to award attorney fees and costs to the prevailing party in damage actions where, as here, the party seeking relief requests $10,000 or

---

[1] The remainder of Twu's claims, and the Cookes' cross-appeal, are addressed in the unpublished portion of our opinion.

less.  Under RCW 4.84.260, the plaintiff is the prevailing party when their recovery, excluding costs, "is as much as or more than the amount" they offered to accept in settlement.

Twu argues that she is entitled to attorney fees on this claim because she recovered more money than she had offered to accept in settlement negotiations.  The Cookes argue that Twu did not beat her pretrial settlement offer because her offer was contingent on the Cookes settling another nonmonetary claim in Twu's favor.  We agree with the Cookes.

Chapter 4.84 RCW's attorney fee provisions "encourage[] out-of-court settlements, penalize[] parties who unjustifiably bring or resist small claims, and enable[] parties to pursue meritorious small claims without seeing the award swallowed up by the expense of paying an attorney." *McKillop v. Pers. Representative of Estate of Carpine*, 192 Wn. App. 541, 545, 369 P.3d 161 (2016).  RCW 4.84.260 provides that a party shall be deemed the prevailing party when their recovery "is as much as or more than the amount offered in settlement."

In *McKillop*, the plaintiff offered to settle for $5,000 in general and special damages and $10,392 in attorney fees, or $15,392 total.  192 Wn. App. at 546.  The jury ultimately awarded her $8,500 in damages.  *Id.* at 547.  Because this amount was more than the $5,000 settlement offer for damages, the plaintiff argued that she was the prevailing party.  *Id.*  Division One of this court held that the trial court erred in awarding attorney fees because it divided the overall settlement offer between the plaintiff's attorney fees and her special and general damages before comparing the damages claim against the amount ultimately awarded by the jury, $8,500.  *Id.* at 548-49.  Instead, the trial court should have treated the entire settlement offer as a single lump sum offer.  *Id.*  Because the $8,500 award was less than the total $15,392 offer, McKillop was not entitled to fees under RCW 4.84.260.  *Id.*

The *McKillop* court relied on *Niccum*, where our Supreme Court held that the trial court should compare the total amount of the settlement offer with the jury award, and costs should not be subtracted before making the comparison. *Niccum*, 175 Wn.2d at 450-51. The court in *Niccum* reasoned that there was no statutory authority for segregating a settlement offer into separate amounts corresponding to damages and costs. *Id.* at 450.

Neither *McKillop* nor *Niccum* addressed the issue of whether other forms of nonmonetary relief, such as declaratory relief on the proper interpretation of an easement, may be segregated from the monetary award for the purposes of determining the prevailing party under RCW 4.84.260. Nevertheless, the logic of *McKillop* and *Niccum* apply under the facts of this case.

Twu argues that the term "amount" in RCW 4.84.260 suggests that the statute applies only to monetary claims and so we should confine our analysis only to comparing the dollar amounts conveyed in each party's settlement offer, ignoring Twu's insistence that the Cookes also dismiss their nonmonetary claims.

Twu's argument ignores the fact that parties often put greater value on a nonmonetary form of relief than they do on any accompanying damages claim. Allowing a party to make settlement of a damages claim contingent on forfeiting another nonmonetary claim, yet ignoring that nonmonetary claim when analyzing RCW 4.84.260, runs contrary to the reasoning of *McKillop* and *Niccum* that the statute does not support segregating the various provisions of a settlement offer.

There is clear evidence in the record that the Cookes were willing to pay the amount of money Twu demanded for the timber trespass. What stymied settlement of the damages claim was not an unwillingness to pay on the small claim, but Twu's unwillingness to accept the

Cookes' offer to pay *unless* they would also resolve the rest of the nonmonetary issues in her favor. The Cookes were clear that they could not accept Twu's proposed height restriction, and they prevailed on that issue at trial. It would contradict the purpose of RCW 4.84.260 for Twu to obtain attorney fees and costs where an agreement could have been reached on her damages claim absent her refusal to compromise on an issue on which she ultimately lost.

We accordingly hold that the trial court properly denied Twu's request for attorney fees for her timber trespass claim.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

ADDITIONAL FACTS

Both properties were initially owned by Mark Martel, but in 1999 he sold the downhill property to Annette King.[2] Neither Martel nor King could remember what vegetation was already existing at that time, though King recalled that there were some ornamental trees on the hillside between their homes.

In 2002, the Cookes purchased the uphill property from Martel. Kelly Cooke testified that at that time there were cherry trees on the slope that Martel told her had been planted by King. She said that the Cookes maintained the cherry trees from the time they moved in.

In 2009, Twu purchased the downhill property. In May 2009 Twu and the Cookes

---

[2] At the time, King had a different last name, but we refer to her using her current name.

negotiated a view easement protecting the Cookes' view of the Columbia River Gorge for their

uphill property. The easement required, in relevant part, that the view

> be free from any new structure or any vegetation in excess of thirty (30) feet measured from the foundation of the existing home on the [Twu] Property that would obscure or impair such view. This is not pertaining to any existing structure prior to the signing of this agreement nor existing vegetation that is older than 10 years prior to the signing of this agreement.

CP at 19. The easement further provided:

> Maintenance of any existing vegetation due to an obstruction of the view across [Twu's] Property will be Cooke's responsibility. Maintenance of any new vegetation due to an obstruction of the view across [Twu's] property will be Twu's responsibility. Existing vegetation is defined as any vegetation in place prior to the signing of this agreement.

CP at 19. Thus, with respect to vegetation, the easement created three categories. First,

vegetation planted prior to 1999 was not subject to the height restriction. Second, vegetation

planted between 1999 and 2009 was subject to the restriction, to be maintained by the Cookes.

Third, any vegetation planted after 2009 was subject to the restriction, to be maintained by Twu.

Due to errors in the original subdivision of the properties the parties also had to obtain a

boundary line adjustment before Twu could close on the purchase, which involved significant

surveying of the properties. The parties ultimately agreed to a boundary line adjustment that

moved the boundary up the hillside, expanding Twu's property and decreasing the Cookes'

property. The adjusted boundary placed the "[e]asement area"—the location of the cherry

trees—within Twu's property. *See* CP at 14-15, 17. However, the surveyor did not delineate the

new boundary line with survey stakes, and according to the Cookes, the surveyor told them that

the adjusted boundary line extended several feet beyond their fence to encompass the trees.

10

The Cookes continued to maintain the cherry trees for a few years, with both parties acting under the apparent assumption that the trees were subject to the view easement height restriction. Then in 2013, without agreement from Twu, the Cookes cut down one of the cherry trees.

At the bench trial, the court heard testimony from Kelly Cooke, Twu, Martel, King, and two arborists. The parties also presented the court with the e-mails between them regarding their discussions of the trees, easement, and property boundaries, as well as many photographs of the hillside where the trees were planted. None of the witnesses could say definitively when the cherry trees were planted, and there was no conclusive physical or photographic evidence.

After the conclusion of trial, the trial court entered findings of fact and conclusions of law. The court adopted the Cookes' interpretation of the proper measuring point for the view easement's height restriction. However, the court found that the Cookes "failed to meet their burden of establishing that the cherry trees were planted after 1999, and therefore they are exempt" from the height restriction. CP at 32-33. The court also found that the Cookes acted willfully and without probable cause when they removed the cherry tree, and accordingly awarded Twu treble damages on her timber trespass claim. The court reasoned that there was ample evidence from the 2009 surveys to make the Cookes "keenly aware" of the true boundary lines between their property and Twu's. CP at 34. The court also specifically noted that it did not believe the Cookes' assertion that they had believed the tree was on their property.

The Cookes cross-appeal arguing that substantial evidence does not support the finding

that the cherry trees were exempt from the view easement and that they acted willfully when they cut down the cherry tree. They also appeal the trial court's decision not to issue an injunction. Twu appeals the portion of the order denying her attorney fees and costs for her successful defense of the Cookes' claim for damages against her.

ANALYSIS

I. TRIAL COURT'S FINDINGS OF FACT

The Cookes challenge the trial court's factual findings that the cherry trees were exempt from the view easement and that they acted willfully and without probable cause when they cut down the tree on Twu's property. We reject both challenges.[3]

At the outset, the Cookes argue that the trial court erred by deciding issues and granting relief not raised or requested by the parties, as they claim neither party asked the court to decide whether the trees were exempt from the easement. But whether the trees were subject to the view easement was critical to determining the merit of the Cookes' claim at trial that Twu was interfering with the easement. That the Cookes recognized this is evident by their written closing argument in which they included a section arguing that the cherry trees were subject to the easement and not exempt. It was therefore not error for the trial court to make a finding on

---

[3] Twu argues that the Cookes failed to properly assign error to the court's individual factual findings, and so all of its findings are verities on appeal. But the Cookes clearly assigned error to the court's conclusions that the trees were exempt from the easement and that David Cooke acted willfully when he cut down the tree. The Cookes' arguments about the sufficiency of the facts adequately informed us and Twu of the nature of their asserted errors. *State v. Yokley*, 91 Wn. App. 773, 778, 959 P.2d 694 (1998).

whether the trees in question were exempt from the easement.

A.     Review of the Trial Court's Findings

We review a trial court's factual findings for substantial evidence. *Church of the Divine Earth v. City of Tacoma*, 5 Wn. App. 2d 471, 488, 426 P.3d 268 (2018), *review granted in part*, 192 Wn.2d 1022 (2019). Substantial evidence is evidence sufficient to persuade a fair-minded person that the premise is true. *Id.* The party challenging the trial court's factual findings bears the burden of proving they are not supported by substantial evidence. *Blackburn v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016). We review de novo whether the trial court's findings of fact support its conclusions of law. *Church of the Divine Earth*, 5 Wn. App. 2d at 488.

We defer to the trial court's credibility determinations. *State v. Imokawa*, 4 Wn. App. 2d 545, 560, 422 P.3d 502 (2018), *review granted*, 192 Wn.2d 1016 (2019). We do not substitute our view of the evidence for that of the trial court, and we are not permitted to reweigh the evidence and come to a contrary conclusion where the trial court found the evidence unpersuasive. *Bale v. Allison*, 173 Wn. App. 435, 458, 294 P.3d 789 (2013).

B.     Substantial Evidence Supports the Trial Court's Finding That the Trees Were Exempt from the View Easement

The Cookes argue that substantial evidence did not support the trial court's finding that the trees were exempt from the view easement. We disagree.

The 2009 view easement excluded any existing vegetation that was planted before mid-1999, 10 years before the easement was signed. The parties dispute which party had the burden

13

of proof at trial to establish when the cherry trees were planted. The trial court properly placed the burden on the Cookes to prove the age of the trees.

The age of the trees was germane to the Cookes' original claim that Twu was violating the conditions of the view easement by allowing the cherry trees to grow above the easement's height restriction. The Cookes sought an injunction to compel Twu to maintain her vegetation below the height restriction of the easement. The party seeking an injunction has the burden to show that they have a clear legal or equitable right. *Kucera v. Dep't of Transp.*, 140 Wn.2d 200, 209-10, 995 P.2d 63 (2000). It was therefore the Cookes' burden to show that the trees were subject to the easement they were seeking to enforce. The court was correct to place the burden on the Cookes as the original plaintiffs seeking an injunction.

The evidence about when the trees were planted was mixed and inconclusive. The prior owners of the two lots could not definitively say when the cherry trees were planted. Martel testified that he could not remember planting any cherry trees or why he would have. King testified that she did plant some ornamental trees, including cherry trees, after she bought the downhill property in 1999, but she could not say when the trees at issue in this case were planted. King also testified that she remembered there being some existing ornamental trees on the slope in 1999.

Kelly Cooke testified that she believed King had planted the trees sometime between 1999 and 2002, because Martel told her that King had planted everything on the east side of the uphill property.

The Cookes' and Twu's conduct suggested that they believed the cherry trees were subject to the view easement and would be maintained by Cookes. First, during the parties' 2009

14

negotiation of the easement, the Cookes sent an e-mail to Twu stating that they "will agree to the maintenance of the trees on the East side of the property going forward but [they] do want to note that those were not existing at the time the original easement was put in place. [King] planted those." Ex. 19. Twu also sent an e-mail to the Cookes stating that she would like the flowering tree on the slope to be pruned but would be open to discussing relocating that tree and replacing it with a tree that does not grow as tall if the Cookes would prefer.

Twu's testimony also suggested that she believed the cherry trees were subject to the restriction. In explaining her e-mails, she stated: "I was thinking maybe they are tired of trimming the tree because, as you know, that cherry tree can grow between 20 to 30 feet and I'm only allowed to grow up to 13 feet for that location." VRP (Vol. IV) at 611. She further testified that "the one tree that was cut down to the stump, that limitation was 12 feet." VRP (Vol. IV) at 613.

These e-mails and testimony suggest that both parties believed the maintenance of the flowering trees to be the Cookes' responsibility. But because they had no personal knowledge about when the trees were planted, their conduct does not establish that the trees actually were subject to the easement. Twu could not have had any personal knowledge of when the flowering trees were planted because she did not buy the downhill property until 2009; rather, she "didn't have any reason to dispute" the Cookes' representation of when the trees were planted. VRP (Vol. IV) at 626; Reply Br. of Appellant at 20.

The court also heard testimony from an arborist who estimated the tree was about 17 years old when it was cut in 2013. The tree was likely propagated around 1996, but the arborist could not say whether this tree was planted on the property before 1999. She testified that the

tree could have been in a nursery for one to six years before being planted, which means it could have been planted anytime between 1997 and 2002. She also estimated the other cherry trees were planted around the same time as the one that was cut.

There was little other evidence of when the trees were planted. The Cookes argue that the photographs of the property that Martel used in a flyer in 2002 do not show the trees, and therefore the trees were not planted until around that time. However, it is difficult to tell from those photographs what types of trees are pictured, or even if the photographs were taken from an angle that would show the trees in question. The Cookes did not establish exactly when these photographs were taken. The trial court concluded that the "limited photographic evidence" failed to show the trees were planted prior to 1999. CP at 32.

The evidence of whether the trees were planted before 1999 thus was not conclusive one way or the other. None of the witnesses who would have had personal knowledge could say definitively when the trees were planted, and there was no conclusive physical or photographic evidence. The trial court ultimately found that the Cookes "failed to meet their burden of establishing that the cherry trees were planted after 1999, and therefore they are exempt" from the height restriction. CP at 32. "'[W]here a trial court finds that evidence is insufficient to persuade it that something occurred, an appellate court is simply not permitted to reweigh the evidence and come to a contrary finding. It invades the province of the trial court for an appellate court to find compelling that which the trial court found unpersuasive.'" *Bale*, 173 Wn. App. at 458 (emphasis omitted) (quoting *Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009)).

16

Given the conflicting testimony and inconclusive evidence, we hold that the trial court's finding that the Cookes failed to meet their burden is supported by substantial evidence.

C.    <u>Substantial Evidence Supports the Trial Court's Finding that the Cookes Acted Willfully and Without Probable Cause When They Cut Down the Cherry Tree</u>

The Cookes next argue that the trial court erred in finding that they acted willfully and without probable cause in removing the tree, making Twu entitled to treble damages. We hold that the court's finding on this point was supported by substantial evidence.

Treble damages are available for timber trespass when the trespass is willful. RCW 64.12.030; *Herring v. Pelayo*, 198 Wn. App. 828, 834, 397 P.3d 125 (2017). In contrast, where the trespass was casual or involuntary, or the trespasser had probable cause to believe that the land was their own, damages will not be trebled. RCW 64.12.040. Once trespass has been shown, the trespasser bears the burden of proving the trespass was casual or involuntary. *Herring*, 198 Wn. App. at 834.

It is undisputed that the Cookes committed trespass when they cut down the tree on Twu's property. Instead, the Cookes argue that their trespass was involuntary because they believed the trees were on their land, and the court's finding to the contrary was unsupported by substantial evidence.

The Cookes point to Kelly Cooke's testimony that they sincerely believed at the time they removed the cherry tree that it was on their property. They claim there were no survey stakes in the ground in 2013 when they bought the house, and their surveyor documented the 2009 boundary line adjustment as running the boundary along the top of the bank, below the cherry trees.

17

But we defer to the trial court's credibility determinations, and the court stated unequivocally that it was convinced that the Cookes knew where the boundary was: "I have no doubt that they knew, when they went down and chopped down Twu's cherry tree, that that was not on their property." VRP (Dec. 15, 2017) at 34; CP at 34; *Imokawa*, 4 Wn. App. 2d at 560. The court reasoned that the surveying and boundary line adjustment between the two properties in 2009 moved the property boundary up the hillside, expanding Twu's property and decreasing Cookes' property. The adjusted boundary placed the "[e]asement area"—the location of the cherry trees—within Twu's property. *See* CP at 14-15, 17. Based on these survey reports, the trial court concluded that the Cookes did not justifiably rely on an alleged incorrect statement from a surveyor. "Mere subjective belief in the right to cut the trees is not sufficient for mitigation of damages pursuant to RCW 64.12.040. Cooke had sufficient facts and circumstances to eliminate any reasonable belief that the cherry tree was on their property." CP at 34. The court concluded: "As of May 2009 there could be no dispute between the parties regarding the established property boundary." CP at 32.

The Cookes argue that it was reasonable of them to rely on the statement of their surveyor and the fact that they had been maintaining the trees for several years without objection from Twu. They contend this case is analogous to *Trotzer v. Vig*, 149 Wn. App. 594, 203 P.3d 1056 (2009). We disagree.

In *Trotzer*, Vig informed Trotzer of his plan to build a trail near the boundary line between their properties. 149 Wn. App. at 609. Trotzer told Vig that he believed the boundary

18

line was the fence that divided their properties. *Id.* In reliance on that statement, Vig removed trees up to the fence that were later revealed to be on Trotzer's property. *Id*. at 610. Division One upheld the trial court's conclusion that only single damages were available for timber trespass because Vig had relied on Trotzer's statement, and Trotzer had not rebutted Vig's contention that his trespass was not willful. *Id*. at 611-12.

The Cookes argue the court was wrong to deem their trespass willful because, as in *Trotzer*, Twu did not present competing evidence to rebut their testimony that they believed the trees were on their property. But the more important similarity between this case and *Trotzer* is that in both cases the trial court's finding on willful trespass was inextricably linked to its determinations of the trespasser's credibility. In *Trotzer*, "the trial court implicitly found Vig credible in his testimony that he believed the fence was the property line and that he tried to stay on his side of this line." 149 Wn. App. at 611. Here, in contrast, the trial court explicitly stated that it did not believe the Cookes' claim that they misunderstood where the boundary line was located.

Based on the survey evidence and the Cookes' lack of credibility, the trial court ruled they had not met their burden to show their trespass was involuntary. We do not disturb the trial court's credibility determinations, and the survey reports support the court's conclusion that the Cookes were "keenly aware" that the cherry tree was not on their property. *See Imokawa*, 4 Wn. App. 2d at 560; CP at 34. We therefore uphold the trial court's finding as supported by substantial evidence.

19

## II. TRIAL COURT'S DECISION NOT TO ISSUE AN INJUNCTION

The Cookes argue the trial court erred in declining to issue an injunction to enforce the view easement after determining the proper baseline for the 30 foot height restriction. They reason that, should Twu violate the easement in the future, such an injunction would permit them to enforce the easement via motion rather than file a new lawsuit for each violation. We disagree.

"An injunction is an extraordinary equitable remedy designed to prevent serious harm; its purpose is not to protect a plaintiff from mere inconveniences or speculative and insubstantial injury." *DeLong v. Parmelee*, 157 Wn. App. 119, 150, 236 P.3d 936 (2010). Accordingly, injunctive relief should be used sparingly and should not be granted where there is a plain, complete, speedy, and adequate remedy at law. *Kucera*, 140 Wn.2d at 209. The party seeking an injunction must show that (1) they have a clear legal or equitable right, (2) they have a well-grounded fear of immediate invasion of that right, and (3) the acts complained of are either resulting in or will result in actual and substantial injury. *Tyler Pipe Indus., Inc. v. Dep't of Revenue*, 96 Wn.2d 785, 792, 638 P.2d 1213 (1982).

A trial court's decision whether to issue an injunction is reviewed for abuse of discretion. *Kucera*, 140 Wn.2d at 209. A trial court abuses its discretion if the decision is based upon untenable grounds or is manifestly unreasonable or arbitrary. *Id.*

The trial court did not abuse its discretion when it declined to issue an injunction in this case. It was the Cookes' burden to show they were entitled to an injunction, but they failed to do

so. *See Tyler Pipe*, 96 Wn.2d at 792. They proved no immediate violation of the height restriction and they showed no basis for a well-grounded fear of immediate invasion of their rights under the easement. Their prediction of some future violation was speculative and the trial court was correct to deny the injunction.

### III. ATTORNEY FEES AND COSTS

**A.      Twu's Fees for Defending Against the Cookes' Claim of Interference**

Twu argues the trial court erred in denying her attorney fees for her successful defense of the Cookes' claim for damages based on Twu's alleged interference with the view easement. Under RCW 4.84.270, the defendant is considered the prevailing party on a claim if the plaintiff recovers nothing. The Cookes concede that Twu was the prevailing party with respect to their failed damages claim, and they agree that Twu is entitled to fees associated with that claim. We accept the Cookes' concession.

**B.      Attorney Fees on Appeal**

Both Twu and the Cookes request attorney fees on appeal. RCW 4.84.290 provides that the prevailing party on appeal shall be considered the prevailing party for the purposes of RCW 4.84.290. Furthermore, if the prevailing party on appeal would be entitled to attorney fees under RCW 4.84.250, we must allow that party such additional amount as we deem reasonable as attorney fees for the appeal. RCW 4.84.290.

Because we uphold the court's factual findings as supported by substantial evidence, the Cookes are not the prevailing party and so are not entitled to fees on appeal. Because Twu was entitled to attorney fees for her defense of the interference claim, she is entitled to attorney fees on appeal for that claim. But because Twu is not entitled to trial fees based on her timber

No. 51294-7-II

trespass claim, she likewise is not entitled to fees on appeal for that claim. The determination of the amount of Twu's award of attorney fees on appeal will be determined by a commissioner of our court. RAP 18.1(f).

## CONCLUSION

We uphold the trial court's factual findings and affirm its conclusions of law and decision not to issue an injunction. We reverse the trial court's denial of attorney fees and costs to Twu for her defense of the interference claim, but affirm the denial of attorney fees and costs for her timber trespass claim. We remand for the trial court to calculate Twu's award for attorney fees and costs for her defense of the interference claim at trial. We award Twu attorney fees incurred on appeal associated with the Cookes' interference claim and deny the Cookes' request for attorney fees on appeal.

Glasgow, J.

We concur:

Worswick, P.J.

Cruser, J.